Jose Antonio **BENITEZ–MANRIQUE,**
Petitioner, Appellee,

v.

Col. Harry P. **MICHELI,** Commandant, Induction Station, Col. Bert Perrin, Commandant, U. S. Army, Southern Command, Puerto Rico, Col. John P. Moyar, Commandant, Rodriguez Army Hospital, Fort Brooke, Respondents, Appellants.

No. 7536.

United States Court of Appeals, First Circuit.

March 22, 1971.

Ezra H. Friedman, Atty., Dept. of Justice, with whom Will Wilson, Asst. Atty. Gen., and Blas C. Herrero, Jr., U. S. Atty., were on brief, for appellants.

Olaguibeet A. Lopez Pacheco, Rio Piedras, P. R., with whom Juanita Trevino Monserrate was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is a petition for habeas corpus. Petitioner is a Selective Service inductee who complains because of a failure to receive a medical examination by the Board. The District Court for the District of Puerto Rico granted the writ, 305 F.Supp. 334, and respondents appeal.

The facts are extensive. Petitioner, a resident of Puerto Rico, executed his original questionnaire on November 7, 1967, noting that he had been "operated in the heart—Will bring medical certificate." Not having done so, on December 14 he was requested to comply as soon as possible. On December 20, no response having been made, the Board notified him that he was classified I–A.

Petitioner's complaint that this action was hasty is ill-founded. He overlooks the fact that he had promised six weeks before to supply the certificate. The Board is entitled to progress. If, for some reason, further delay was unavoidable, it behooved petitioner to report this fact. A heart operation, not otherwise defined, is not necessarily disabling. Having received no further description, there was no error in the Board's classifying petitioner I–A on December 20. Moreover, even had there been error, petitioner lost his rights by failure to appeal.

On January 29, 1968 petitioner submitted a certificate of a Dr. Romero to the effect that in 1962 he had been operated upon for an interauricular septal defect. "Recovery was uneventful." There was no suggestion that petitioner was in any way disabled, or, as we will come to later, that this disorder came within the government's disabling classifications. The Board did nothing as a result of this submission, and in April 1969 petitioner was given his pre-induction physical. In May he received notice from the Board that he had passed, together with a further questionnaire. Petitioner completed the questionnaire, claiming he was medically disabled, and submitting another copy of Dr. Romero's certificate, together with an "Annual routine [X-ray] examination" of July 23, 1968. This latter showed, "The heart is normal in size with prominent pulmonary veins and dilated main pulmonary arteries. No other abnormality is seen." On or about June 22 the Board notified petitioner that he might submit more medical certificates, giving him until August 13.[1] Petitioner then submitted a full copy of the 1962 hospital records, which, besides describing the operation, his discharge in good condition, and the absence of any heart murmur, indicated good health and "excel-

---

1. Part of the reason for this delay was that petitioner was seeking a student deferment. No basis for such was established.

lent physical activity." Accompanying this was a current letter of the operating surgeon, which made no mention of any residual effects. In addition petitioner filed a July 1969 electrocardiogram and fluoroscope report and a mother's non-medical letter.

The Board reviewed this file and stated, by letter of August 13, that it had concluded that the Armed Forces should determine petitioner's fitness to serve, and that the new documents would be forwarded and considered at the time set for induction. Petitioner was inducted on August 27, 1969, the Army apparently not finding these matters persuasive. He was ordered to report to Fort Jackson, South Carolina, on September 1st. For reasons not elucidated in the record he, instead, submitted himself for a medical examination at the San Juan Army Hospital on September 2d. Copies of the documents he had filed with the Board were there inspected. Petitioner was found fit for duty. On the same day, he filed the present petition. His sole complaint is that he should have received an examination by a doctor appointed by the Board.

We must first consider jurisdiction. The respondent Micheli is the commandant of petitioner's Induction Station; the respondent Perrin is commandant of the Puerto Rico Army Command; the respondent Moyar is commandant of the Army Hospital. All deny custody of the petitioner. Col. Moyar is clearly correct. Petitioner did not go to the hospital by order of the Army. He was no more in custody there than he would have been in custody of the civil police had he gone to the station to ask a question. Col. Micheli asserts he lost custody when petitioner was inducted. Col. Perrin asserts that he lost custody, either because petitioner was, by order, required to be at Fort Jackson prior to the date of the filing of the petition, or because of the fact that, on that date, he was A.W.O.L.

Custody, of course, for the purpose of habeas corpus relief is something less than total physical restraint. Jones v. Cunningham, 1963, 371 U.S. 236, 83 S. Ct. 373, 9 L.Ed.2d 285. Against the logic of respondents' contentions, it may be argued that if the order of induction was invalid, Micheli's custody never ceased. No court that we are aware of, however, has so held. If Perrin did obtain custody, it may be suggested that the transfer to the commandant of Fort Jackson required some physical act beyond the execution of a piece of paper. The cases which have recognized the continuing custody of the initial command, however, involve petitions filed prior to the date that the transferee was due at his new post, and are accordingly not too helpful. *See, e. g.,* Feliciano v. Laird, 2 Cir., 1970, 426 F.2d 424, 427 n. 4. By not filing the petition until he was A.W.O.L., petitioner faced a further strain upon any concept of custody by a command from which he was officially detached. Since, for reasons that we will come to, we find no substantive merit in the petition, we will make no final decision with respect to petitioner's meeting the jurisdictional requirement of Ahrens v. Clark, 1948, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, viz., custody in the district where the petition is filed.

We proceed to the merits. As we have said, petitioner had already been classified I–A. Although he bases his case on 32 C.F.R. Part 1628, "Physical Examination," the various papers he submitted to his local board in the spring and summer of 1969 must be considered as well in the light of 32 C.F.R. Part 1625, "Reopening and Considering Anew Registrant's Classification." Section 1625.2 calls for reopening upon the presentation of "facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification." Put another way, if the registrant makes a prima facie showing within those terms, the Board must reopen. Mulloy v. United States, 1970, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362. Similarly, under the provisions of Part 1628 in effect in 1969 the Board was required to order a

medical interview if the registrant indicated the existence of a disqualifying medical condition or defect.[2] No case or regulation, and no principle of fairness requires action by the Board if he does less. This is the present petitioner's difficulty.

 Section 1628.1 provides that the Surgeon General shall prepare a list of "medical conditions or physical defects that disqualify registrants for service in the Armed Forces." The list in effect in 1969 is contained in A.R. 40–501, June 19, 1968. Petitioner points to two subsections.[3] Subsection 2–20b covers petitioner's particular heart operation, but only where there are "residual abnormalities or complications." Petitioner was obviously neither indigent nor otherwise impeded from fully presenting his claim. Over a period of 18 months he furnished reports from four doctors and technicians; yet none went to the point of asserting such a residue. The other subsection, 2–19a, refers to "pronounced dilation of the main pulmonary artery." Petitioner did file an X-ray report indicating the existence of pulmonary arterial dilation, but it failed to describe it as pronounced. Insofar as the district court found that petitioner's submissions came within the Surgeon General's list, the finding is unsupported. Petitioner did not state a claim sufficient to require the Board either to reopen his classification or to order a medical interview. He therefore cannot complain of the Board's failure to accede.[4]

Quite apart from the fact that petitioner has passed three physical examinations, and shown no reason why he

should not pass another, we have rarely seen so much ado about so little. By its letter of August 13 denying relief, but referring petitioner to the armed forces for examination, rather than depriving him of due process the Board gave him all to which he was entitled. Petitioner was properly classified; he was properly refused reopening; he was properly inducted. The order granting the writ is vacated, and the case is remanded to the district court with instructions to dismiss the complaint. Because the court's order had the effect of suspending petitioner's service, the Army may adopt any appropriate procedure that will exclude from his term of duty the period between the order and the dismissal of the complaint.

---

2. The provisions for registrant-initiated medical interviews were contained in subsection 1628.2(b). The subsection was revoked in August of 1970 by Executive Order 1155, 35 Fed.Reg. 13719 (1970).

3. A third subsection, 2–18c(2), was erroneously held by the district court to have been met. Petitioner is correct in not pressing this matter.

4. Had a prima facie case been made out, petitioner would, of course, have been

prejudiced by the Board's failure, through inaction, to reopen. United States v. Ford, 1 Cir., 1970, 431 F.2d 1310. We note that even if the Board had reopened, the district court's discussion of the desirability of a local board examination rather than one by the armed forces overlooked section 1628.4(e) and, possibly, section 1628.3. We cannot think that the regulations suggest that the armed forces examination is a prejudiced one.