**Raymond F. CARNEY, Jr., Petitioner,**

v.

**SECRETARY OF DEFENSE, Melvin LAIRD, et al., Respondents.**

**Civ. A. No. 4451.**

United States District Court,
D. Rhode Island.
April 14, 1971.

Milton Stanzler, Providence, R. I., for petitioner.

Lincoln C. Almond, U. S. Atty., District of R. I., Providence R. I., for respondents.

## OPINION

PETTINE, District Judge.

In this habeas corpus action, petitioner, a Navy officer, seeks judicial review of the denial by the Chief of Naval Personnel of his in-service conscientious objector application. Jurisdiction is alleged under 28 U.S.C. §§ 2241 and 1391(e). Respondents contend that this Court lacks jurisdiction to entertain this claim. The parties have submitted an agreed statement of facts relating to that issue, but the Government chose not to question the petitioner when he testified as the sole witness at the hearing upon the merits of the instant petition, and in fact objected to *any* hearing, apparently out of concern that its jurisdictional challenge might somehow be considered waived. Similarly, the Government offered no other evidence whatsoever. Thus, except as appears specifically to the contrary *infra*, I have before me an uncontroverted record.

## JURISDICTION

The stipulated facts, insofar as relevant to the disposition of the jurisdictional aspect of this petition, disclose first that petitioner was commissioned an Ensign in the Navy on June 11, 1969, and assigned to active duty on a destroyer, the U.S.S. Samuel B. Roberts, attached to the Newport, Rhode Island Naval Base. Petitioner was then given a temporary appointment to the rank of Lieutenant (junior grade) on June 4, 1970. On July 30, 1970, after more than one year of continuous assignment to the same destroyer (which was stationed at Newport throughout his duty aboard it) petitioner applied for conscientious objector status. In a letter dated September 15, 1970, the Chief of Naval Personnel denied petitioner's C.O. request, and on the same date orders were cut, transferring petitioner to a hospital ship stationed off the coast of Vietnam. Petitioner received the letter on September 23, 1970 and received the orders on September 30, 1970. He left the ship on the latter date and took up residence in Newport, where he was living at the time he filed this petition, on November 2, 1970.

Habeas corpus jurisdiction in this case is founded upon 28 U.S.C. § 2241, which provides, in part:

"§ 2241. Power to grant writ

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions*. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

\*    \*    \*    \*    \*    \*

(c) The writ of habeas corpus shall not extend to a prisoner unless—

(1) He is in *custody* under or by color of the authority of the United States or is committed for trial before some court thereof;

\*    \*    \*"    (emphasis added)

■ Respondents contend that the stipulated facts establish that this Court lacks sufficient "custody" of petitioner to maintain jurisdiction herein. Insofar as jurisdiction is asserted against the Secretary of Defense, the Secretary of the Navy and the Chief of Naval Operations, under 28 U.S.C. § 1391(e), I must agree. That provision relates only to proper *venue* and was not intended by Congress to broaden the availability of habeas corpus relief, and I read it not to have done so. Schlanger v. Seamans, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 28 L.Ed.2d 251. However, the remaining respondent is the Commanding Officer of the U.S.S. Samuel B. Roberts. In support of his motion to dismiss he relies particularly upon the following arguments:

1) petitioner had already been ordered to report to a new duty station, beyond the territorial jurisdiction of this Court, prior to the filing of this petition;

2) petitioner had been officially detached from the destroyer and was on leave on November 2, 1970, and was therefore merely *voluntarily* in this District;

3) when detached from the destroyer, petitioner carried his personnel records with him;

4) in the preparation of fitness reports by a Naval command, pursuant to Bureau of Naval Personnel Instructions (specifically, BUPERSINST 1611.12B Sec. 2–1), the *new* duty station is obligated to account for and evaluate an officer's performance during the leave and travel time from the previous duty station.

■■ The last two arguments can be readily disposed of. Even assuming, *arguendo*, that possession of one's personnel records while in transit to a new duty station has any probative value on

the issue of "custody," this contention was raised only in respondent's memorandum of law, and is unsubstantiated by the record herein, and therefore is not properly before me for consideration. As to the Instruction concerning fitness reports, it also is not in evidence herein because of the Government's voluntary silence. However, I take judicial notice of its existence [1] and have examined its contents. Again I am left to divine, without Government assistance, the rationale behind the report by the *new* duty station rather than the old. I conclude that the Instruction in question has no probative value on the issue of "custody." While it may, as the Government suggests, indicate the relinquishment of control by the former duty station, it may also be nothing more than a determination that it is more expedient that an officer's *future* command be concerned with his misconduct during the leave and/or travel period than his prior duty station for reasons of future disciplinary action. Perhaps neither of these is the real explanation for the fitness report procedure, but at any rate the equivocal nature of the Instruction, insofar as it bears on the issue of "custody," causes me to reject the assertion that it points to lack of jurisdiction in this forum.

■ That an enlisted member of the Armed Forces is "in custody," within the meaning of § 2241(c), is a question that has not been finally determined. Scaggs v. Larsen, 396 U.S. 1206, 1208 n. 3, 90 S.Ct. 5, 24 L.Ed.2d 28 (1969). However in my opinion the better-reasoned view is that federal courts have limited review over claim of unlawful military service. Hammond v. Lenfest, 398 F.2d 705, 710–712 (2d Cir. 1968); cf. Bates v. Commander, First Coast Guard District, 413 F.2d 475, 477 (1st Cir. 1969). I note in passing that the Government here concedes that "[i]t is already well settled by [sic] law that a

---

1. Unlike the allegation as to carrying one's personnel file, for which the Government presented no regulation which *requires* such possession, I have been referred by the Government's brief to a specific regulation regarding the composition of fitness reports.

member of the armed forces is in custody so as to be entitled to the availability of the writ of habeas corpus [citing *Hammond, supra*]." Respondents' brief at p. 2.

The jurisdictional issue in this case, therefore, is whether petitioner may pursue habeas corpus relief *in this Court*—i. e., whether this is the proper federal forum for maintaining this action, considering the territorial limitation contained in § 2241(a). Respondents place primary reliance upon the following language, drawn from Ahrens v. Clark, 335 U.S. 188, 192–193, 68 S.Ct. 1443, 1445, 92 L.Ed. 1898 (1948):

> "Thus the view that the jurisdiction of the District Court to issue the writ in cases such as this [footnote omitted] is restricted to those petitioners who are confined or detained within the territorial jurisdiction of the court is supported by the language of the statute, by considerations of policy, and by the legislative history of the enactment. We therefore do not feel free to weigh the policy considerations which are advanced for giving district courts discretion in cases like this. If that concept is to be imported into this statute, Congress must do so."

█ Precision in the use of the term "custody" when applied to State or federal prisoners disappears when applied to a member of the military who has freedom of travel during authorized leave from a duty station to which he has been attached. In this situation the fiction represented by the term "custody" breaks down as an attempt is made to give it operational meaning in the face of a complex military chain of command. However it can be stated with some certainty at this time that a member of the Armed Forces cannot maintain a habeas corpus action in a jurisdiction where he has merely chosen to travel while on leave or while absent without leave. United States ex rel. Rudick v. Laird, 412 F.2d 16, 21 (2d Cir.), cert. denied, sub nom. Rudick v. Laird, 396 U.S. 918, 90 S.Ct. 244, 24 L. Ed. 197 (1969) (hereinafter *Rudick*); Weber v. Clifford, 289 F.Supp. 960, 961 (D.Md.1968); Tucci v. Laird, C.A.No. 4731 (D.R.I.1971) (unpublished opinion); see Donigian v. Laird, 308 F. Supp. 449, 453 (D.Md.1969).

The situation here, however, is very different. Petitioner had been attached to a ship assigned to Newport for over one year prior to filing this petition. At the time his conscientious objector application was rejected by the Navy, he was still assigned to Newport. He received his new orders while on duty in Newport. He has never taken up a duty station other than on a ship attached to Newport. This is not a case in which a serviceman has chosen merely to reside in a jurisdiction which is unrelated to his military duties and to which he has voluntarily traveled to file his petition.

There are several recent decisions supporting the proposition that where a serviceman is under orders to report to a new duty station, there is sufficient "custody" in the District where his former duty station is found to support the filing of a habeas corpus action in that jurisdiction, at least where, as here, the record fails to demonstrate that the petitioner is already A.W.O.L. Feliciano v. Laird, 426 F.2d 424, 427 n. 4 (2d Cir. 1970); Morales Crespo v. Perrin, 309 F.Supp. 203, 205 (D.P.R.1970); United States ex rel. Armstrong v. Wheeler, 321 F.Supp. 471, 476 (E.D.Pa. 1970); Laxer v. Cushman, 300 F.Supp. 920, 923–24 (D.Mass.1969); Weber v. Clifford, 289 F.Supp. 960, 961 (D.Md. 1968). Our own appellate court has expressly reserved decision on this issue. Benitez-Manrique v. Micheli, 1 Cir., 439 F.2d 1173. That *Rudick, supra,* does not reach a contrary result, as the Government contends, is apparent from the caption of the case. The only respondents named therein were the Secretary of Defense and the Secretary of the Army, neither of whom could be found within the territorial jurisdiction of the District Court. The Second Circuit specifically reserved judgment on the "difficult

746

issue" of which duty station had control over petitioner while he was on leave, since *both* were in California. 412 F.2d at 21.

Finally, the Government contends that the recent decision of the United States Supreme Court in Schlanger v. Seamans, *supra,* is dispositive of this petition. I cannot agree. *Schlanger,* as I view it, is a case which is factually unique. An Air Force enlisted man assigned to a Georgia military base filed a habeas corpus petition in Arizona while on temporary duty at Arizona State University, in a self-help educational program called Operation Bootstrap. He named as respondents the Secretary of the Air Force, the Commander of the Georgia base to which he was assigned, and the Commander of the Air Force R. O.T.C. program at Arizona State. In affirming the dismissal of the petition on the ground of lack of jurisdiction, the Court merely reiterated the rule, announced in *Ahrens, supra,* that a court may entertain a habeas corpus petition under § 2241 only where both the petitioner and his custodian are found within the territorial boundaries of the court. Since the first two named respondents were not present in Arizona, and since petitioner was not in the R.O. T.C. program, none of the named respondents was an Arizona "custodian" of the petitioner, simply as a matter of fact.

■ In the instant case, however, the Government concedes that petitioner *was* in the custody of the destroyer's Commanding Officer, who *was* located within the territorial jurisdiction of this Court, until the time when the orders to report to a new duty station were executed. Thus aside from reiterating the territorial requirements for habeas corpus jurisdiction, *Schlanger* has no bearing upon the issue before me, which is whether a serviceman who is on leave and under orders to report to a new duty station can bring a habeas corpus

action in the jurisdiction where his present duty station is located, before the time for reporting to the new station has expired. Without reaching the issue. whether jurisdiction to consider this petition would also lie in the District encompassing his new duty station,[2] I find sufficient "custody" in this District at the time this petition was filed, on the facts as set forth above, to satisfy § 2241. All of petitioner's contacts with the Navy while on active duty have been in Newport or on a ship attached to Newport and it is senseless as a matter of policy, of logic, and of statutory interpretation, to require petitioner to travel across this country to a location in which he has never been physically present nor had any connection whatsoever, in order to obtain judicial review of the denial of his discharge application.

## REVIEW OF THE NAVY'S DETERMINATION

In compliance with DoD Directive 1300.6 VI B. 8. and Bureau of Naval Personnel Manual 1860120 § 3b(5), petitioner's commanding officer, a military chaplain and a military psychiatrist each forwarded to the Chief of Naval Personnel his statements and recommendations regarding petitioner's application. A scrupulous examination of those reports discloses an unequivocal determination by each that petitioner was sincere in his asserted conscientious objection to all war. Typical of the remarks is the following comment by the chaplain who interviewed petitioner on four different occasions:

"It is my opinion that Lieutenant (junior grade) CARNEY is sincere in his adoption of Zen Buddhism as his religious orientation, which defines for him his conscientious objection to all kinds of warfare involving physical destruction and killing.

His 'conversion' to Zen Buddhism began with an academic interest in East-

---

**2.** Jarrett v. Resor, 426 F.2d 213, 217 (9th Cir. 1970), appears to be some authority to the contrary.

ern religions and philosophy during his college days, but at that time was a matter of investigation and study. His relation to Zen Buddhism as a matter of personal conviction grew out of his practice of the religion and his 'conversion' during the period in which he was deployed in the USS SAMUEL B. ROBERTS."

Similarly, the Executive Officer of the destroyer on which petitioner served related the following observation of petitioner over the two-month period immediately prior to the ship's return to Newport, when the application for discharge was filed:

"MR. CARNEY, in my opinion has become a firm believer, if not 'enlightened', in the teachings of Zen Buddhism and that in fact, he has, consistently with his demonstrated superior abilities, become thoroughly absorbed by the compulsion to abide by the requirements for withdrawal, passivity and meditation of Zen. The fact remains, that, realizing his commitment to the Navy, he has, in violation of his convictions, been discharging his responsibilities very effectively. He acknowledges the significant debt owed the Navy for his education, but simultaneously and perhaps more passionately, has identified a near compulsion to become a Zen Buddhist Monk in Japan."

The examining psychiatrist added the following analysis of petitioner's sincerity, drawn from two separate examinations of him:

"He has become firm in his conviction that he cannot exert force or become a proactor in any kind of force. He will not kill or force people to obey him. These convictions have become consolidated after many years of study of Zen Buddhism.

\* \* \* \* \* \*

He appears sincere in both his religious convictions and in his conclusions about war and force.

\* \* \* \* \* \*

I recommend *support* of his request for status as a conscientious objector." (emphasis in original)

Petitioner's Commanding Officer concurred in these evaluations and "strongly" recommended approval of his application and discharge from the Navy.

In denying the application the Chief of Naval Personnel gave the following reasons:

"Vacillations in your beliefs during the past several years have been such that even though the Chief of Naval Personnel recognizes your own belief in the sincerity of your conversion to Zen Buddhism he can only conclude that you are still in the process of searching for a basic philosophy in life. As a result he does not accept as fact that you have arrived at such a deeply held conviction governing your life as would preclude your participation in war in any form as envisioned in the law defining the status of conscientious objector and recent Supreme Court interpretations of that law. In arriving at his conclusion the Chief of Naval Personnel took into consideration, in addition to your basic request and the supporting testimonials and endorsements, that:

a. You voluntarily entered the Navy, an integral part of the defense force of the United States, and accepted an education and training as an officer at the expense of the taxpayers of the United States, administered through the Navy, and in exchange again voluntarily agreed to serve as an officer in the Navy at the pleasure of the President of the United States and for not less than four years.

b. While pursuing that education and training you associated yourself with and took part in the activities of, without apprising the appropriate Naval Authorities, a number of organizations which at one time or another have openly advocated and/or practiced violence and at least one of which advocates changing our governmental system by force.

c. In June 1969 you accepted your commission as an Ensign in the U. S. Navy after taking an oath 'without mental reservations or purpose of evasion' to 'support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely. * * *'

d. In June 1970 you accepted your promotion to Lieutenant (junior grade) in the U. S. Navy, knowing that your previously taken oath was still binding.

In view of the conclusion indicated above and the reasons given, your request for classification as a conscientious objector is denied."

■ In reviewing this administrative decision by the Navy this court's inquiry is limited to the question whether there was a basis in fact for the Navy's decision. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Further this court's review is limited to the evidence which was before the Bureau of Naval Personnel and upon which it acted. Bates v. Commander, First Coast Guard District, 413 F.2d 475, 477 n. 2 (1st Cir. 1969).

■ Reasons "a," "c" and "d" can be quickly disposed of. Mere entry into the Armed Forces, or continued service therein, cannot be taken as evidence of insincerity, for otherwise the provision for in-service conscientious objection would be meaningless. Bouthillette v. Commanding Officer, Newport Naval Base, 318 F.Supp. 1143 (D.R.I.1970). In addition, petitioner testified that his temporary appointment to Lieutenant (junior grade) did not indicate either to him or to the Naval Legal Officer at Newport (who examined military regulations) that it would be inconsistent with his application for discharge.[3]

■ The only remaining basis for the Navy's action lies in assertion "b" above regarding certain of petitioner's activities while a member of N.R.O.T.C. at Harvard College. It appears that in answer to a question on a security clearance form regarding membership in certain organizations, petitioner replied:

"Membership in Students for a Democratic Society (1965) and Young Peoples Socialist League (1966–68). Extent of membership is having attended meetings of these organizations and supported various programs with financial contributions. No offices held."

At the hearing upon this petition there was convincing testimony that the extent of petitioner's involvement was that he listened to the views espoused by those groups, on several occasions donated money at functions sponsored by those organizations, and occasionally distributed leaflets in their behalf. Furthermore the evidence before me and before the Navy demonstrates that these organizations did not advocate violence at the time of petitioner's limited association with them. Aside from the obviously attenuated relevancy of these activities to the sincerity of petitioner's conscientious objection maturing some 2–5 years later, the Navy Department simply had no basis in the record before it for concluding that petitioner's "association" with S.D.S. and Y.P.S.L. was inconsistent with his asserted opposition to war in any form. The rejection of a man's otherwise indisputable conscientious objection to war in any form on the basis of his mere attendance, many years earlier, at informational and social functions sponsored by organizations which were innocuous at the time of his essentially passive participation demonstrates highly irresponsible decision-

3. The form which he signed accepting the appointment merely stated in pertinent part as follows:

"I acknowledge receipt of notice of temporary appointment to the grade of lieutenant (junior grade).
2. I do not decline this appointment."

making by the Office of the Chief of Naval Personnel and a lack of recognition by that Office of its grave responsibility to *objectively* examine a man's *presently* professed beliefs.

I find the Navy's determination that petitioner has not "* * * arrived at such a deeply held conviction governing your life as would preclude your participation in war in any form as envisioned in the law defining the status of conscientious objector and recent Supreme Court interpretations of that law * * *" totally unsupported in the record before the Navy. I have examined that entire record carefully and find that every shred of evidence points to exactly the opposite conclusion. Furthermore, the Navy's finding that petitioner is "* * * still in the process of searching for a basic philosophy in life" is both unsupported by any of the factors used by the Navy in reaching that conclusion, which I discussed *supra,* and also immaterial to petitioner's sincerity. It is probably fair to say that few persons can fully discover and articulate their "basic philosophy in life," and that most people make a life-long search for the basic principles to guide their lives. At any rate, one's "search for a basic philosophy in life" need not have ended before he is entitled to con-.scientious objector status. Petitioner here clearly meets the requirements of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), as implemented by DoD Directive 1300.6 IV B3(b).

Though the parties have not addressed themselves to the proper remedy here, I find that outright release from all military obligations is appropriate. Though not raised by the litigants, I also find that the question of release has not been mooted by the Navy's decision to assign petitioner to noncombatant duties aboard a hospital ship, because it is clear from his reassignment orders that this duty would be temporary and the Navy would retain the discretion to reassign petitioner at any time.

The petition for habeas corpus is hereby granted, releasing petitioner from all further military service.