**SCHUMAN v. UNITED STATES.**
**No. 13692.**

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1953.

Rehearing Denied Jan. 21, 1954.

J. H. Brill, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

David Don Schuman appeals from a judgment of conviction in the district court on a charge of refusing to submit to induction into the Armed Forces of the United States.[1] Trial by jury was waived in accordance with the provisions of Rule 23(a), Fed.R.Crim.P., 18 U.S.C. A.

Schuman, a resident of San Francisco, California, duly registered with Local Board No. 40 of that city in 1948. In September of 1949, he filed his Selective Service Classification Questionnaire[2] in which he gave his occupation as a pre-medical student, stated that he was not a minister nor a student minister, and made no claim to exemption as a conscientious objector. On October 10, 1950, Schuman was classified as 1-A.

Schuman sent Local Board No. 40 a letter on August 14, 1950, advising that body that in November of 1949 he had begun studies of the Bible with the Jehovah's Witnesses; that he was enrolled in the Theocratic Ministry School; that he was engaged in various religious activities; and that he spent many hours in study at home and requested classification as IV-D (minister or student minister). On November 30, 1950, he was advised that his classification in 1-A would continue. When it was determined in July of 1951 that Schuman had been registered with the wrong local board, his files were transferred to Local Board No. 38, from which he ultimately received his orders to report for induction. This board classified Schuman anew, again in 1-A, in September of 1951. In a personal appearance, sought by Schuman and granted by the board, he requested classification either as an ordained minister or as a conscientious objector. The local board refused to change his classification.

Schuman appealed from the decision of the local board, requesting the appeal board to classify him as an ordained minister who is also a conscientious objector opposed to all forms of service in the Armed Forces. The appeal board, after receiving a report from a Department of Justice Hearing Officer[3] continued Schuman in Class 1-A. Schuman finally received orders to report for induction, went through the induction process up to the point where he was asked to take the step forward which signifies induction into the Armed Forces, but refused to take this final step. The indictment and the trial below followed.

Schuman stipulated at the trial that he had been classified 1-A by the proper local board, that he had been ordered to report for induction, that he had so reported, but that he had refused to take the step forward which signifies induction into the Armed Forces. Thus the only question presented in this case is whether there was a basis in fact for the classification of Schuman in 1-A rather than in IV-D (minister or student minister) or 1-A-O or 1-O (conscientious objector). See Cox v. United States, 332 U.S. 442, 448–452, 68 S.Ct. 115, 92 L.Ed. 59.

While it is true that we have no power to weigh the evidence which the board considered in making its classification, Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567, we have recently been instructed by the Supreme Court that our task (at least insofar as the claim to exemption as a minister is concerned) is "to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. * * * [T]he courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption." Dickinson v. United States, 74 S.Ct. 152, 157.

All of the evidence bearing upon Schuman's claim for exemption as a minis-

---

1. 50 U.S.C.A.Appendix, § 462(a).

2. SSS Form No. 100.

3. As required by 50 U.S.C.A.Appendix § 456(j).

ter [4] that is contained in the Selective Service file was placed therein by Schuman. This evidence tends to prove the following: At the time Schuman was requesting classification as a minister, he had given up all secular work and studies because they interfered with his religious studies; that his position in the Witnesses' sect is that of a "presiding minister" or "overseer" whose job it is to "direct others" in their religious work, to give public lectures on the faith, to perform marriages, and to speak at funerals. These latter functions, he claimed, are what makes him a "minister" within the Act—e. g., that while all members of the sect claim to be ministers ordained by God, he is a leader of ministers, with a position analogous to the ministers or pastors of the more orthodox religions. The only activity to which Schuman adverted that was not strictly a religious one was the study of philosophy in San Francisco City College in order to "*aid* [him] in [his] ministry and to give [him] a better understanding of [his] fellow man." Affidavits in support of the above assertions were filed by superiors in the sect as well as a letter signed by sixty-two persons attesting to the fact that Schuman preaches and participates in all phases of the ministry.

■ In arguing that the local board and appeal board had basis in fact for denying Schuman's claim as a minister, the Government points out that all members of the Jehovah's Witnesses sect claim to be ministers ordained by God, and that Congress obviously did not mean to exempt all members of a religious sect when it provided that "regular [5] or duly ordained [6] ministers of religion * * * shall be exempt from training and service." 50 U.S.C.A.Appendix, § 456(g). In this we agree, for as stated in Martin v. United States, 4 Cir., 190 F.2d 775, 777: "Congress undoubtedly intended to exempt such persons as stand in the same relationship to the religious organizations of which they are members, as do regularly ordained ministers of older and better known religious denominations." However, it does not follow that no member of such a sect may qualify as a minister. Those who preach and teach the principles of the sect as a regular vocation and who are recognized by the sect as regular ministers are entitled to exemption under the Act. 50 U.S.C.A.Appendix, §§ 466(g) (2), 456(g); see Smith v. United States, 4 Cir., 157 F.2d 176, 181, certiorari denied 329 U.S. 776, 67 S.Ct. 189, 91 L.Ed. 666; Id., 329 U.S. 831, 67 S.Ct. 367, 91 L.Ed. 704. The undisputed evidence in the file shows that Schuman devoted his entire life [7] to spreading the gospel as interpreted by the Witnesses and that he is recognized as a minister by the other members of the sect.

4. The exemption for ministers is contained in 50 U.S.C.A.Appendix, § 456(g), which reads: "Regular or duly ordained ministers of religion, as defined in this title (sections 451–454 and 455–471 of this Appendix) * * * shall be exempt from training and service (but not from registration) under this title (said sections)."

5. 50 U.S.C.A.Appendix, § 466(g) (2) defines a "regular minister of religion" as "one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister."

6. 50 U.S.C.A.Appendix, § 466(g) (1) defines a "duly ordained minister of religion" as "a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization."

7. Schuman received his material support from his father, who is engaged in the steel business in the State of Washington.

■ The Government has also attempted to show that only those members of Jehovah's Witnesses who bear the title "company servant" are entitled to exemption as a minister. The Selective Service file does not show the exact position of a "company servant" in the hierarchy of the sect, but since the uncontroverted evidence clearly supports Schuman's claim that he is a minister, we do not need to consider the position of these "company servants."

■ There is nothing inconsistent with Schuman's claim to exemption as a minister in the fact that he is attending San Francisco City College with a view to obtaining a degree in philosophy. The study of philosophy seems to us to be a valuable addition to the field of religion. This fact does not amount to independent evidence that Schuman has not painted a complete picture of his activities. See Dickinson v. United States, supra.

Schuman also claimed and was denied exemption as a conscientious objector.[8] In his application for such exemption, Schuman stated that he believed in a Supreme Being and that his duties to this Being superseded any duties to man. In answer to the question, "Under what circumstances, if any, do you believe in the use of force?", Schuman stated: "Only if personally aggessed (sic) or if a loved one is aggressed I would use force; but never carnal weapons." (Emphasis Schuman's.) At the hearing before the local board, Schuman stated: "I respect the Government of the United States, I will do everything the Government orders except fight," and "I don't believe killing is the right thing to do."

■ In view of the statutory language of 50 U.S.C.A.Appendix, § 456(j), the denial of the exemption as a conscientious objector amounted to a finding that Schuman was not, "by reason of religious training and belief, * * * conscientiously opposed to participation in war in any form." Yet Schuman's statements as to his religious beliefs are uncontradicted, and one of the two members of the local board who were present at the hearing stated to Schuman, "Your veracity of your faith is unquestionable." We cannot find in the proceedings before the local board any affirmative evidence which controverts Schuman's claim. There are only the suspicions raised by the fact that Schuman did not begin his religious studies until after he had registered for the draft and by the fact that he had not sought exemption until after the Korean War broke out. As the Supreme Court has stated, "when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." Dickinson v. United States, supra, 74 S.Ct. at page 158.

Nor does the report of the Department of Justice Hearing Officer show that it, together with the file, gave the appeal board any better basis in fact for its conclusion. The Hearing Officer stated, inter alia, in his "statement of facts" that "The Registrant devotes considerable time to his religious practices and wants to spend his life in the propagation of the faith of the Jehovah Witnesses." As a "Conclusion," the Hearing Officer stated:

8. The exemption for conscientious objectors is provided by 50 U.S.C.A.Appendix, § 456(j), which reads: "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation

in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. * * *"

"The Hearing Officer wishes to emphasize that the Registrant became actively identified with the Jehovah Witnesses in 1949 and although apparently, sincere in his religious beliefs, he has not been identified with the faith a sufficient length of time to convince the undersigned that he is entitled to exemption from military duty.

"Accordingly it is recommended that his appeal be not sustained and that he be classified 1-A."

■ The length of time one has been connected with a faith has no bearing upon whether one is entitled to exemption as a conscientious objector. The only question to be considered is whether the registrant has a sincere (i. e., "conscientious") religious opposition to participation in war in any form. The Hearing Officer concluded that Schuman was "sincere in his religious belief" but because he had not been "sincere" long enough[9] recommended that exemption be denied. This is but another example of relying upon suspicion rather than on affirmative evidence.

Evidence that Schuman stands in relation to the Jehovah's Witnesses as do ministers of the more orthodox religions to their congregations and that Schuman sincerely believes the teachings of the Jehovah's Witnesses religious sect and because of such beliefs and teachings is conscientiously opposed to service in the Armed Forces stands unimpeached and uncontradicted in the record. There is no affirmative evidence in the record sustaining the findings of the board either that Schuman was not a minister, see Dickinson v. United States, supra, or that he was not conscientiously opposed by religious belief to participation in war in any form, see Taffs v. United States, 8 Cir., 1953, 208 F.2d 329.

The judgment of the district court is reversed and the cause is remanded with instructions to dismiss.