Ensign Charles G. TAYLOR, III,
Petitioner-Plaintiff,

v.

John CHAFFEE, Secretary of the Navy,
Captain Stastny, Commanding Officer,
Long Beach Naval Station, Captain C.
J. Casserly, Commander Mine Flotilla
3, Naval Station, Long Beach, Califor-
nia, Respondents-Defendants.

Civ. No. 71-374.

United States District Court,
C. D. California.

April 30, 1971.

# 1132

Richard P. Fox, Los Angeles, Cal., for petitioner.

Robert H. Meyer, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty. Chief, Civil Division, by David H. Anderson, Asst. U. S. Atty., Los Angeles, Cal., for respondents-defendants.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

KELLEHER, District Judge.

By these proceedings in habeas corpus petitioner seeks judicial review of, and relief from, the denial by respondent, Secretary of the Navy, acting through the Chief of Naval Personnel, of his application for discharge from the United States Naval Reserve as a conscientious objector. Taylor submitted his petition and an application for a temporary order restraining respondents from removing him from the jurisdiction of this court during pendency of these proceedings. This court granted a temporary restraining order and ordered respondents to appear and show cause why petitioner should not be discharged as prayed.

## JURISDICTION

█▌ Petitioner asserts jurisdiction of this court under 28 U.S.C. § 2241. It appears well established that a person in the armed forces may, by habeas corpus proceedings, seek judicial review of the denial of his application for discharge as a conscientious objector. Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); Jarrett v. Resor, 426 F.2d 213 (9th Cir. 1970).[1] However, under 28 U.S.C. § 2241(a) a habeas corpus petitioner must be physically present and detained in custody within the jurisdiction of the District Court in which the petition is filed. Jarrett v. Resor, *supra*, 426 F.2d at p. 217.

When this petition was filed petitioner Taylor was present within the jurisdiction of this Court and for almost five months prior thereto he had been assigned to duty aboard the U.S.S. LOYALTY, home ported at the United States Naval Station in Long Beach, California, within the Central District of California. A week before filing his petition Taylor had received orders for assignment from Long Beach to the Eastern Sea Frontier in New York and was authorized a delay of up to thirty days to report to his new Command, with any excess time over thirty days to count as advance leave. Respondents contend that during this interim period Taylor is under the control of the Chief of Naval Personnel in Washington, D. C., so that this Court lacks jurisdiction to review his petition.

There appears to be no case in this Circuit deciding the jurisdictional question on facts as herein presented. In Jarrett v. Resor, *supra*, petitioner, whose previous duty post had been Fort Knox, Kentucky, had been ordered to a "port call" at Travis Air Force Base, Califor-

---

1. See cases collected in Glazier v. Hackel, (Ninth Cir. 1971), 440 F.2d 592, 594.

nia, solely for the purpose of boarding an airplane bound for Viet Nam, petitioner's new station, and was on leave at the Berkeley home of his parents at the time he filed his petition in the Northern District of California. The Ninth Circuit held that petitioner was not in custody in the Northern District and affirmed the District Court's dismissal for want of jurisdiction. Jarrett v. Resor, *supra,* at 217. Similarly, Judge Pregerson of this Court dismissed a habeas corpus petition by a serviceman who had never been assigned to duty in the Central District of California nor whose pending duty station was in this District. Jacobson v. Laird, Civil No. 70–177–HP (C.D.Cal. April 22, 1970). See also Gonzales Salcedo v. Lauer, 430 F.2d 1282 (9th Cir. 1970). These cases appear substantially in accord with United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir. 1969), wherein petitioner was at home in New York City on leave awaiting transfer from Fort Ord, California, to the Chief of Overseas Replacement in Oakland, California. The Second Circuit held that the District Court for the Southern District of New York was without jurisdiction since petitioner was not and never had been detained in custody within the jurisdiction of that Court.

■ However, when squarely faced with the question here presented, the Second Circuit held that when the petition is filed in the District where the applicant is then situated and where the dispatching station is located, jurisdiction exists. Feliciano v. Laird, 426 F. 2d 424 (2d Cir. 1970). Therein, petitioner had been detached from his prior duty station at Fort Wadsworth, New York, and was in transit to a new duty station in Oakland, California, at the

time he filed his petition. This Court will follow the essentially sensible result of the *Feliciano* case. Ensign Taylor, petitioner herein, has been assigned to duty in this District for almost five months prior to bringing this petition; his application for discharge was submitted and processed while on duty here and at the time this petition was brought Taylor properly remained within this district; accordingly, the Court finds ample basis to support its jurisdiction to consider his petition.

The Court has reviewed the certified transcript of the administrative proceedings which resulted in the denial by the Chief of Naval Personnel of petitioner's application to determine whether this denial had a basis in fact. United States v. Coffey, 429 F.2d 401 (9th Cir. 1970). For the reasons recited below, the Court has concluded that no such basis in fact exists.

THE FACTS

Shortly after graduating from Auburn University, where he had studied on a Naval Reserve Officers Training Corps scholarship, petitioner accepted a commission in the United States Naval Reserve on June 9, 1970, and on June 22, 1970, reported for mine warfare training at the Fleet Training Center in Charleston, South Carolina. Taylor states that his conscientious objections to war crystallized during the time he was at the Fleet Training Center and in early October, after having reported for duty on board U.S.S. LOYALTY, took the first steps necessary to compile a record to support his application for discharge under Department of Defense Directive No. 1300.6 (May 10, 1968), and Department of the Navy, Bureau of Personnel Notice 1900 (August 21, 1970) [2] ;

2. Directive No. 1300.6 provides:

IV. A. National Policy * * * Congress * * * has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces and accordingly has provided that a person having bona fide religious objection to participation in war in form * * * shall not be inducted into the Armed Forces * * *.

IV. B. DoD Policy. Consistent with this national policy, bona fide conscientious objection * * * by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable.

Personnel Notice 1900 provides:

1. c. (2) Since it is in the national interest to judge all claims of conscientious objection by the same stand-

his application was formally submitted on November 13, 1970.

In addition to considerable biographical detail, Taylor's application sets out at some length his reasons for requesting discharge. Specifically, Taylor characterizes military service as ultimately directed to the use of violent force, often for the purpose of taking human lives, and states that it cannot be reconciled with his fundamental moral, religious and ethical belief in the sacredness of human life. Taylor's application states that his beliefs are basically religious in origin and they appear well within the standards for conscientious objection announced in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), and Department of the Navy, Bureau of Personnel Notice 1900 (August 21, 1970). His beliefs appear to have general application to war and not to the current conflict in Southeast Asia; see Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

The application was supported by several letters from fellow officers who knew Taylor in the military and persons who knew him in civilian life, all attesting to petitioner's sincerity. The application was further supported by evidence that while an undergraduate student at Auburn University Taylor had, along with other students, instituted proceedings in the United States District Court for the Middle District of Alabama against the university president to permit Mr. William Sloane Coffin, a prominent critic of United States military policy in Southeast Asia, to appear and speak on the Auburn campus. Taylor, at this time, was Student Body Treasurer at the school and ascribes his subsequent defeat in an election for Student Body President to these and other anti-war activities; Taylor also appears to have been publicly critical of certain

university policies which he characterized as "institutional racism." The apparent purport of such evidence was to show that, in the past, Taylor had acted upon beliefs sincerely and deeply held and, at least on one occasion, to his personal detriment.

Pursuant to his request for discharge and in accordance with the procedures required under applicable Navy Regulations, Taylor was personally examined by four officers in positions of responsibility in the Navy.

On October 27, 1970, Lt. P. F. Andrus, a psychiatrist with the United States Navy Medical Corps, personally examined Taylor and found no evidence of mental disease or disorder. Lt. Andrus reported that Taylor:

"* * * is intelligent and perceptive and appears to have thought out his position with regard to CO status quite carefully.

"It is not the policy of the psychiatric consultation in this matter to recommend that such status be granted. However, I can say that the man appears firm and sincere in his beliefs and is deserving of consideration for them."

Taylor was also examined by his Force Chaplain at Long Beach who found him completely sincere in his objections and that he entertained such views as to all wars. Taylor's commanding officer on the U.S.S. LOYALTY also recommended the granting of his application for discharge stating that although he had known Taylor for only a brief period:

"* * * [Taylor] has impressed me with his honesty, sincerity, and determination to do the 'right' thing."

Pursuant to military regulations,[3] the commanding officer appointed Lt. Daniel M. Caine, U.S.N.R., to conduct a hearing on Taylor's application, which hearing was held on November 3, 1970.

---

ards, whether made before or after entering military service, Selective Service System standards used in determining classification of draft registrants prior to induction shall apply to members who

claim conscientious objection after entering the naval service.

3. Department of the Navy, Bureau of Personnel Notice 1900 (August 21, 1970) subparagraph 3.b.(4).

At the hearing, Taylor was examined at length as to his beliefs; he stated that though he had had growing reservations about his military service prior to accepting a commission, these reservations did not mature into conscientious objections until after he entered on active duty. Taylor further stated that the formulation of these beliefs had been gradual and that there had not been any singular event or occurrence which had crystallized his objections.

After conclusion of the hearing, Lt. Caine recommended that Taylor's application be granted and stated in his written findings, that Taylor was sincere in his beliefs, that his views were firmly held, that his aversion to war extends to all wars without exception and that his conscientious objections crystallized after the taking of his oath and before his assignment to a Navy vessel "bound for Viet Nam."

And so it appears that all Navy personel who personally examined Taylor in respect of his application for discharge reached substantially the same conclusions.

Nevertheless, on January 28, 1971, the Chief of Naval Personnel, in Washington, D. C., who did not personally examine Taylor as to his beliefs, denied the application after review of the file.

SCOPE AND BASIS OF JUDICIAL REVIEW

Courts are properly hesitant to intervene in military affairs. See, for example, Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). This reluctance stems from a recognition of the necessity for military officials to have considerable discretion in matters affecting military personnel, including the application and implementation of Congressional policies exempting from military duty persons with conscientious objections to such service. This discretion is by no means unlimited, and the Courts play an important, though limited, role in reviewing the denial by military officials of conscientious objector claims.

The parties do not dispute and the Court does not question that the appropriate test for this Court to apply in reviewing the denial of Ensign Taylor's conscientious objector application is the so-called 'basis in fact' test, the same standard applied in judicial review of Selective Service classification decisions. The underlying purpose of judicial review in these cases is to assure that the administrative proceedings were fairly conducted; accordingly, the Court's task is to determine that the Chief of Naval Personnel adequately considered Taylor's application, carefully weighing the evidence in support thereof, and that the decision was grounded on an affirmative factual basis, not merely speculation or conjecture. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Schuman v. United States, 208 F.2d 801 (9th Cir. 1953).

Viewed in this light, it is apparent that the denial of Taylor's application was without a legally sufficient basis. The Chief of Naval Personnel stated that the "crux" of the matter was the "credibility" of Taylor's claim that his conscientious objections crystallized following the acceptance of his commission in June 1970. The Chief noted that prior to that date Taylor, as part of his N.R.O.T.C. training, served on a nine-week destroyer cruise during the summer of 1967, three weeks of parachute training and three weeks of Marine boot camp during the 1968 summer, and eight weeks of cruiser duty in the 1969 summer; the Chief also noted that prior to going on full-time active service, Taylor had selected assignment to either a gunboat or destroyer as his first choice of sea duty.

The Chief, having noted that before coming on active duty Taylor had been exposed to military life and that only a few months prior to submitting his discharge application Taylor had voluntarily accepted his Naval Commission, conceded that crystallization of conscientious objections within that period was not impossible. However, the Chief stated that Taylor had not demonstrated the

" * * * deep life controlling convictions of a true conscientious objector."

Perhaps most significantly the Chief concluded that the crystallization "occurred when your orders were changed from a coastal mine sweeper to an oceangoing mine sweeper bound for Viet Nam" (which conclusion is contrary to the record and to the finding of the hearing officer). Also, the Chief of Naval Personnel determined (and apparently based his decision thereon) that the petitioner underwent his crystallization "only two months after you completed an education subsidized by the taxpayers."

It is understandable that the Chief of Naval Personnel should express for himself and for his superior, the Secretary of the Navy, a form of fiscal shock over what has occurred here. By hindsight, the Navy likely now concludes that it was a grave mistake to offer to Taylor, and to allow him to accept, a commission in the Naval Reserve. The very record submitted in support of his application for conscientious objection status is replete with recitals of early experiences and events which demonstrate, at an early stage of Taylor's career, incipient conscientious objection and probable cause to doubt his value to the Navy as an officer. Even Taylor himself now acknowledges that his present position, although constitutionally and legally supportable, made him somewhat sheepish about the whole matter. (He offered in open Court to reimburse the Navy for his cost to them of his education.)

But we have here presented a question of constitutional right, not merely of fiscal or military policy. The Chief of Naval Personnel must have a basis in fact to support the rejection of the findings of his subordinates who, under pertinent regulations and upon personal observation and evaluation, decided in favor of Taylor. It is not enough for the Chief of Naval Personnel to doubt the credibility of petitioner; far less does it suffice for him to reach his conclusion on an erroneous understanding of the facts. At most, the Chief has found petitioner's views sufficiently dis-

tasteful to warrant involuntary retention of petitioner in a Navy where he never belonged in the first place. Constitutionally, the Chief of Naval Personnel is now prohibited from keeping Taylor as correction of the original error in granting him a commission.

It is not enough on review of the file for the Chief of Naval Personnel to disbelieve in Taylor's views; it is necessary to find the views were not sincerely held. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1954). The finding must have a basis in fact. United States v. Coffey, *supra*.

The fact that Taylor began steps to file an application for discharge only after four months of active duty will not alone support a denial of his conscientious objector application. Several years prior to the United States Supreme Court's rulings in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), limiting the "religious training and belief" requirements of conscientious objection, the Ninth Circuit held that the length of time a Selective Service registrant had been connected with a pacifistic denomination had no bearing on whether he might be entitled to conscientious objector status since the only question to be considered was the sincerity of the claimant's beliefs. Schuman v. United States, 208 F.2d 801, 805 (9th Cir. 1953). Similarly, the extent of military experience prior to asserting the claim of exemption is not material to determination of conscientious objector status; what does matter in determining such claims is the subjective state of the claimant's mind, in short, his sincerity and credibility. See Bishop v. United States, 412 F.2d 1064, 1067 (9th Cir. 1969).

Since such determinations are not amenable to unerring objective determination, there can be no adequate substitute for first hand contact with and personal examination of the claimant. Indeed, Ensign Taylor's case graphically

demonstrates this proposition; every responsible Navy officer who examined Taylor personally and was able to test his demeanor and credibility in the exposition of his beliefs concluded that he was sincere in these beliefs; only the Chief of Naval Personnel, without benefit of personal contact and able only to test Taylor's claim against his written application and service record concluded that he lacked sincerity.

 During the hearing on this petition the Government was unable to assert that the Chief had available any information which was not before the four officers who personally examined Taylor; in fact, the specific detail of Taylor's N.R.O.T.C. summer training, apparently relied upon by the Chief in his denial, are fully set out in the transcript of the hearing before Lt. Caine. Absent such information or other compelling reasons, the Court concludes that the denial of Taylor's application by the Chief of Naval Personnel was not proper where, as here, all responsible Navy officers who personally examined Taylor had strongly concluded that he was sincerely and conscientiously motivated in his objections to military service. Especially, this is the case where an experienced Navy officer who conducted a lengthy and extensive examination of petitioner had concluded that he was sincere. The Chief of Naval Personnel, however, on a bare record, which he partly misread, and on a philosophical objection to Taylor's abuse of the taxpayers' subsidy of his education, denied the application. This is not the "basis in fact" required by law.

Having concluded that the basis for denying Taylor's application by the Chief of Naval Personnel was legally insufficient, the Court further concludes that a remand for further proceedings would be futile since there is no reason to believe that upon remand the Chief would personally examine Taylor; nor has the Court found authority in recent case law for such a remand where the sole question is the sincerity of the claimant's objections to military service. According-

ly, the Court undertook a careful examination of Taylor's application for discharge, the transcript of the hearing before Lt. Caine, the letters and recommendations in support of the application and after such review the Court found no basis for not finding Taylor a sincere conscientious objector.

 After examining the application and supporting materials, the Court concluded that Taylor has made out a prima facie case of conscientious objection. However, before granting the relief sought in the petition, the Court felt compelled to render its decision on more than the paper record which was before the Chief of Naval Personnel and, over objection of respondent, the Court called Ensign Taylor to the stand for the limited purpose of testifying whether he accepted his June 1970 commission freely and without mental reservation and whether there was any particular event or occurrence which caused his conscientious objections to crystallize following entry into military service. Taylor testified that prior to accepting his commission he had had growing reservations about military service and, especially, United States military involvement in Southeast Asia, but until after he came on active duty he had believed that these scruples could be reconciled with his military service. Taylor further testified that no particular event or occurrence caused his beliefs to crystallize, but that his objections to military service arose out of reflection and application of moral principles he had long held to his experiences in the Navy following his commissioning. After considering Taylor's application in the light of his testimony and demeanor under examination and the strong recommendations in support of his application by the Navy officers who personally examined him, the Court concluded that Taylor's objections to military service are sincerely and conscientiously motivated.

This opinion will be deemed to constitute Findings of Fact and Conclusions of Law.

It now appearing to the Court that petitioner having shown that he is entitled to the relief requested,

It is hereby ordered that the petition be and hereby is granted and that petitioner forthwith be discharged from custody of respondents.

It is further ordered that the Clerk of the Court send, by United States mail, copies of this order to petitioner and counsel for all parties.