Major William L. MILLER, Jr.

v.

**SECRETARY OF DEFENSE,**
Melvin Laird, et al.

No. SA–71–CA–132.

United States District Court,
W. D. Texas, San Antonio Division.

Sept. 3, 1971.

Supplemental Opinion Dec. 22, 1972.

**1038**

Gerald H. Goldstein, Levey & Goldstein, San Antonio, Tex., for petitioner.

William S. Sessions, U. S. Atty., Henry Valdespino, Asst. U. S. Atty., San Antonio, Tex., for respondents.

## MEMORANDUM OF DECISION

SUTTLE, District Judge.

On the 27th day of August, 1971, came on for final hearing the above styled and numbered cause, and the Court, having considered the pleadings, memoranda of authorities, comments of counsel, and evidence adduced at both this and the hearing on jurisdiction June 30, 1971, finds and rules as follows:

### I

Since graduation from the United States Military Academy, West Point, N. Y., in 1962, petitioner has served as a commissioned officer in the United States Army, including one tour in Vietnam. On March 5, 1969, he was assigned to the Fifth Army Student Detachment, Ft. Sheridan, Ill., for graduate study in social psychology at the University of Missouri, which was his "duty station." On September 30, 1970, while attending the University of Missouri, petitioner tendered his resignation from the Army, stating as his reason therefor that

> ". . . I can no longer allow myself to be placed in the situation where it becomes necessary for me to send other men to their deaths or to plan the destruction of other human beings."

By letter of December 14, 1970, petitioner was notified that his resignation was "not favorably considered," and on January 5, 1971, he was ordered to Vietnam, with a reporting date of March 2, 1971. On January 11, 1971, petitioner filed his Application for Discharge as a Conscientious Objector with the Commanding General, Ft. Sheridan, pursuant to Army Regulation 635–20.

At the request of Headquarters, Fifth Army, to avoid the expense and inconvenience of returning him to Ft. Sheridan, Ill., petitioner was "attached" to Headquarters, Ft. Leavenworth, Kan., February 8, 1971, for "counseling required . . . and appearance before an officer knowledgeable in policies and procedures relating to Conscientious Objector Matters as required by AR 635–20." [1] Following these procedures, petitioner's file was returned to Fifth Army Headquarters, Ft. Sheridan, Ill., February 12, 1971, for further processing, but petitioner remained attached to Ft. Leavenworth pending final determination of his application.

On March 9, 1971, as part of a merger of the Headquarters of the Fifth and Fourth Armies completed June 30, 1971, petitioner was transferred to the Fourth Army Student Detachment, Ft. Sam

---

1. AR 635–20 ¶ 4b(3) (July 31, 1970); see DoD Directive No. 1300.6 § VI.B.4. (May 10, 1968, as amended December 20, 1968, June 29, 1970, and July 28, 1970).

Houston, Tex. The Conscientious Objector Review Board disapproved petitioner's application on March 29, and his file was sent to Headquarters, Fourth Army, on April 7, 1971. On April 10 Fourth Army Headquarters amended petitioner's Vietnam orders to provide for a new reporting date of April 23, 1971. On April 19, 1971, petitioner filed for Habeas Corpus in the United States District Court for the Western District of Missouri, seeking review of the Army's denial of his application. The Petition was dismissed without prejudice the next day pursuant to the opinion in Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971).[2] Upon petitioner's request, Fourth Army Headquarters, Ft. Sam Houston, Tex., again amended his Vietnam orders on April 23, 1971, to provide a reporting date of May 1, 1971. On April 27, petitioner "signed out" at Ft. Leavenworth, Kan., where he was still attached, and on April 28 filed the instant petition.

## II

The above facts are a necessary background for respondents' contentions in and this Court's denial of their Motion to Dismiss. It is clear that at least until April 27, 1971, petitioner, while "attached" to Ft. Leavenworth, Kan., was "assigned" to the Fourth Army Student Detachment, Ft. Sam Houston, Tex., and that respondent Lt. Gen. Underwood,

Commanding Officer, Fourth United States Army, a resident of this district, had custody and control of petitioner. Respondents, however, point to Army Regulations which indicate that when petitioner "signed out" on the Personal Register at Ft. Leavenworth, where he was "attached,"[3] citing as authority his orders for Vietnam, and this was used in preparing the "Morning Report,"[4] he effected a "Permanent Change of Station"[5] and left the "accountable strength" of the Fourth Army, Ft. Sam Houston, Tex.,[6] reverting to a transient personnel status, accountable directly to Headquarters, Department of the Army, Washington, D. C.[7] Thus, respondents contend, as of the Morning Report of April 28, 1971, regardless of when it was prepared, petitioner was no longer in "custody" of the Commanding Officer, Fourth Army, Ft. Sam Houston, Tex., but only the Department of Army, Washington, D. C. They rely on *Schlanger* to support the proposition that petitioner has thus again filed his Petition in a District in which no custodian was located.

 The Court finds, however, that the regulations relied upon by respondents are internal bookkeeping procedures of the Army governing their computation of changes in strength accountability, and cannot be considered determinative of this Court's jurisdiction under 28 U.S.C. § 2241.[8] Here, like in *Schlanger*,

---

2. Miller v. Underwood, Civil Action No. 19297-a, W.D.Mo., April 20, 1971, finding, as in *Schlanger*, no officer in petitioner's chain of command within the district in which he had been attending school.

3. The Court need not decide whether, as suggested by petitioner, this "attachment" for the Army's convenience violated the mandate of AR 635-20 ¶ 6. Suffice it to say that had petitioner been sent to and followed his assigned unit pending processing of his application, the problem of his ultimately getting to the district in which his custodian was located would not have arisen.

4. See AR 210-10 ¶ 18-1 (September 30, 1968).

5. As defined in AR 614-6 ¶ 3a (January 8, 1963).

6. See AR 680-1 ¶ 7-1 (September 11, 1969), Change 2 (October 21, 1970), superseding AR 335-60 (January 25, 1968), as amended, AR 680-8 (February 20, 1969), and DA message 091659Z (July 1969).

7. See Exhibit No. E and inclosures, Respondents' Exhibits to Brief in Support of Motion to Dismiss, etc.

8. Feliciano v. Laird, 426 F.2d 424 (2d Cir. 1970); Carney v. Laird, 326 F.Supp. 741 (D.R.I.1971); Laxer v. Cushman, 300 F.Supp. 920, 923–924 (D.Mass.1969).
 Indeed, the Army's procedures have been changed several times in the past

petitioner was at a duty station outside the District in which his assigned unit, and hence his "custodian" or Commanding Officer, was located. Like Schlanger, petitioner first filed in the District in which he was stationed, with like result. Following the implicit mandate of the opinion in *Schlanger*, petitioner left his "attached" unit, using the only authority he had, and proceeded to file the instant Petition in the District in which his assigned unit was located. This unit, through its Commanding Officer, had been exercising control over petitioner since his transfer there on March 9, 1971, and had possession and custody of his file and papers relevant to his Petition.[9] The Commanding Officer of Fourth Army, Ft. Sam Houston, Tex., did not cease to be petitioner's "custodian" for the purpose of federal Habeas Corpus jurisdiction simply because of petitioner's seeking to invoke that jurisdiction and the paper allocation of "accountable strength" dictated by the most recent Army Regulations. While there may also be a custodian in petitioner's chain of command in Washington, D. C., sufficient to invoke the jurisdiction of that court,[10] there is, and was on April 28, 1971, Army Regulations notwithstanding, a "custodian" within the territorial jurisdiction of this Court in the person of respondent Lt. Gen. Underwood, Commanding Officer, Fourth United States Army, Ft. Sam Houston, Tex.[11]

### III

Petitioner's Application concisely (respondents claim too briefly) states his belief as follows:

> I have come to the point where I base my whole life on the faith that only through love—genuine love of humanity and life—can mankind live in peace. This peace cannot be established through the power and might of the gun, but only through gentleness, consideration, and love.[12]

Petitioner can thus "no longer participate in war of any form." This belief is based upon parental training in the teachings of Christ, formal training in Methodist church school, and personal study of religious, philosophical, and other writings. The Application further traces the development and ultimate crystallization of his beliefs through his educational and military experience.

The interviewing chaplain, Maj. Wittenburg, found petitioner "sincere in his desire to be discharged as a Conscientious Objector" and that "the source of his religious beliefs seem to stem from his christian [sic] training in the Methodist church and extensive reading in other religious philosophies." He further found that petitioner "has searched deeply into his own motives and ethical principles," is "very uncomfortable in this situation, but is firmly convinced that it is the only way he can respond to his feelings." The interviewing psychiatrist found no disorder. The hearing

---

few years, providing for "strength accountability loss" computations at various points between departure, arrival or reporting date, depending upon the practical bookkeeping needs involved and not upon jurisdictional facts of custody or control.

9. See p. 1038, *supra*.

10. See Gruca v. Sec'y of Army, 141 U.S. App.D.C. 85, 436 F.2d 239 (1970) ; but see Berman v. Laird, Habeas Corpus No. 34–71, D.D.C., April 14, 1971.

11. See Feliciano v. Laird, *supra*; Carney v. Laird, *supra;* Taylor v. Chaffee, 327 F.Supp. 1131 (C.D.Cal.1971) ; U.S. ex rel. Walten v. Resor, No. 16223 (W.D.La., January 25, 1971) ; U.S. ex rel. Armstrong v. Wheeler, 321 F.Supp. 471 (E.D. Pa.1970) ; U.S. ex rel. Lohmeyer v. Laird, 318 F.Supp. 94 (D.C.Md.1970) ; Morales Crespo v. Perrin, 309 F.Supp. 203 (D.C.P.R.1970) ; Silberberg v. Willis, 306 F.Supp. 1013 (D.C.Mass. 1969), rev'd on other grounds, 420 F.2d 662 (1st Cir. 1970) ; Laxer v. Cushman, *supra*; Weber v. Clifford, 289 F.Supp. 960, 961 (D.C.Md.1968).

12. Petitioner summarizes his belief in a prayer written by his wife and himself for their wedding as follows: "Grant us clear vision of our goal in life—that of loving all thy creation unselfishly, humbly and with purity of heart."

officer, Col. Cortner, found that petitioner "was very sincere during the interview and obviously has acquired some strong feelings during his association with the academic climate." He recommended disapproval, however, listing as "considerations weigh[ing] against letting Major Miller out at this time" the following:

> First is his obligation to the Army. Second is the fact that the Army can use his expertise gained in graduate school in Vietnam now. And finally the suddenness of Major Miller's decision to become a conscientious objector makes it extremely difficult for me to believe that is the sole reason for his decision to get out of the Army.

Col. Cortner also noted that "the Army is about to undergo a reduction in force and it would appear appropriate to let Major Miller resign instead of forcing someone out who wants to stay." Majs. Kroll and Caldwell, of the Ft. Sheridan Adjutant General Corps both recommended disapproval citing Col. Cortner's comments.

The Conscientious Objector Review Board disapproved petitioner's Application for Discharge, finding that "applicant lacks the requisite depth of conviction to qualify for discharge as a conscientious objector." While recognizing that the first two reasons given by Col. Cortner "are invalid to deny an otherwise sincere conscientious objector," the Board credited the third reason and further relied upon the "brevity" of the application, the absence of any letters of recommendation, petitioner's initial request for resignation instead of discharge as a conscientious objector, and their view that the chaplain's statement was "less than complete support of the application."

## IV

As is apparent from the foregoing, petitioner has presented, through his Application, a prima facie case of conscientious objection to war in any form based upon religious training and belief.[13] He clearly and concisely states that as a result of his religious training and belief he must renounce the use of force in any circumstance and is obliged to seek release from further service in the military, either by resignation or discharge. He "need show no more."[14] The burden thus rests upon respondents to show a basis in fact in the record which will support the Army's denial of petitioner's Application for Discharge.[15]

Initially, it is clear that the "brevity" of petitioner's Application and the absence of letters of recommendation

13. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States v. Stetter, 445 F.2d 472 (5th Cir., 1971); Helwick v. Laird, 438 F.2d 959 (5th Cir. 1971); Pitcher v. Laird, 421 F.2d 1272 (5th Cir. 1970); Kessler v. United States, 406 F.2d 151 (5th Cir. 1969).

14. United States v. Stetter, *supra* at 477.

15. See Aquilino v. Laird, 316 F.Supp. 1053, 1056–1057 n. 2 (W.D.Tex.1970); *cases cited supra.*

Once it is found that an applicant's conscientious objection is "religious," as that term has been construed in United States v. Seeger, *supra*, and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), the only issue remaining is sincerity, see Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), and a discussion of "depth of conviction," if ever relevant, is foreclosed. See United States v. Stetter, *supra*; Helwick v. Laird, *supra*, 438 F.2d at 964; Hackett v. Laird, 326 F.Supp. 1075, 1078 (W.D.Tex.1971); Quimina v. Laird, SA–71–CA–155 (W.D.Tex., July 23, 1971). Respondents implicitly recognize this by arguing here, not "depth of conviction," but that there is a basis in fact for finding "disbelief," "lack of honesty," and "bad faith." See Brief and Answer in Opposition to Petition etc., filed August 24, 1971.

While doubtful of the propriety of going beyond the Board's stated reason for denial, see Hackett v. Laird, *supra*, because of the ultimate disposition made and the arguments of respondents, the bases in fact urged will be considered.

are irrelevant.[16] The applicant's characterization of his beliefs, manner of expressing them, and documentation in support thereof do not provide a basis in fact for denying an otherwise sufficient claim.[17] Nor does the Army Regulation require anything more than submission of names, addresses, etc. of persons who could supply information regarding applicant's beliefs.[18] These were submitted. Furthermore, the Court cannot agree with the Board's view of the chaplain's statement as giving "less than complete support" to petitioner. Such an interpretation could be based upon nothing but pure speculation, prohibited this Court,[19] and there is nothing in the statement approaching a "hard, provable, reliable fact [to] provide a basis for disbelieving the claimant." [20]

While the Board cited Col. Cortner's third "consideration" or reason for recommending disapproval of petitioner's Application,[21] the Court can find nothing there or in the remainder of his interview report which would amount to a basis in fact for denial. His unsupported "belief" is insufficient.[22] If by "suddenness" Col. Cortner means a short period of change, his view is wholly unsupported by the record, which shows a gestation period for petitioner's conversion to conscientious objection of many years.

If he meant the proximity of his Application to his being ordered back to Vietnam, we are dealing with "timeliness" discussed below. In short, the Court finds no basis in fact in the statement of Col. Cortner for the ultimate denial of petitioner's Application for Discharge.

■ Finally, respondents rely on two events immediately preceding petitioner's Application, claiming that his attempted resignation on September 30, 1970, and his Vietnam orders published January 5, 1971, cast sufficient doubt on his claim to justify denial. Reliance is placed on Witmer v. United States [23] for the proposition that a prior attempt to secure release from military service is a basis in fact for denial of any subsequent claim of conscientious objection. This reliance is wholly misplaced. Petitioner's tender of resignation, unlike the prior applications in Witmer,[24] is not only wholly consistent with petitioner's claim,[25] but fully corroborates it, showing as it does a growing, if not complete conscientious objection which would give him no rest or peace if he allowed himself to continue a part of an instrument of war.[26] Respondents are left with the fact that petitioner was ordered to Vietnam immediately prior to filing his Application for Discharge. But it is now

16. Arguments as to "brevity" and lack of letters from references given are hardly credible where no effort was made to obtain further statements from petitioner or letters from references.

17. United States v. Stetter, *supra*; see United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970).

18. See AR 635–20 ¶ 4a(4) ; DoD Directive No. 1300.6 Encl. 1 ¶ D.

19. See Bates v. Commander, 413 F.2d 475, 478 (1st Cir. 1969), citing Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

20. Helwick v. Laird, *supra* 438 F.2d at 963.

21. But see United States ex rel. Donham v. Resor, 436 F.2d 751, 754 (2d Cir. 1971).

22. Kessler v. United States, *supra*.

23. 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

24. Witmer initially listed his occupation as worker in a hat factory, disclaiming any ministerial exemption. He then claimed to be a farmer and requested an agricultural deferment so he could "contribute a satisfactory amount to the war effort." When this was refused, he applied for a ministerial exemption. Finally, he applied for a conscientious objector classification, claiming he was opposed to any participation in war of any form. The Court held these facts sufficient basis to support a finding of insincerity.

25. See Capobianco v. Laird, 424 F.2d 1304, 1306 (2d Cir. 1970) ; United States ex rel. Martinez v. Laird, 327 F.Supp. 711, 714 (N.D.Fla.1971).

26. Welsh v. United States, *supra*, 398 U.S. at 344, 90 S.Ct. 1792.

clear that "timing of an application, as a solitary fact without other support in the record, is by itself not enough to provide a basis in fact for rejection of a prima facie showing of conscientious objection."[27] The instant record presents nothing more.

## V

■ The record in this case reveals no basis in fact for the Army's finding that petitioner did not qualify as a sincere conscientious objector, based upon his religious training and belief. The Court can find no affirmative evidence in the record to refute his claim. Finding no basis in fact for the Army's denial of petitioner's Application for Discharge as a Conscientious Objector, the Petition must be, and the same is hereby, in all things, granted, and respondents shall release petitioner from the United States Army pursuant to Army Regulation 635–20, and it is so ordered.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the Order of the United States Court of Appeals for the Fifth Circuit entered June 26, 1972, hearings were held on July 26, 1972, and on November 28, 1972; six oral depositions were taken; stipulations were filed on July 25, 1972, and on November 27, 1972, all to supplement the record with factual findings regarding the presence of Major Miller's Custodian within this Court's territorial jurisdiction. The Court having heard the evidence and considered the stipulations of the parties, and the files and records of the case, hereby finds the additional facts and states the conclusions of law as follows:

### FINDINGS OF FACT

1. That from the date Petitioner-Appellee, William L. Miller (hereinafter referred to as Major Miller) entered Graduate School at the University of Missouri, Kansas City, Missouri, on June 2, 1969, until March 9, 1971, Major Miller was permanently assigned to the Fifth U. S. Army Student Detachment, Fort Sheridan, Illinois, with duty station at the University of Missouri at Kansas City, Kansas City, Missouri. Major Miller was stationed at Fort Knox, Kentucky (Third Army) prior to his assignment to Fifth Army on June 2, 1969. App. P. 153. Major Miller reported directly to his duty station at the University of Missouri from Fort Knox. App. P. 153. After filing his application for discharge as a Conscientious Objector, Major Miller was temporarily attached to Fort Leavenworth, Kansas, on February 28, 1971, although he remained permanently assigned to the Fifth U. S. Army Student Detachment (Stipulation of Facts, Joint Exhibit 1). While Major Miller was never physically present at Fort Sheridan, Illinois (Deposition of Major Miller, Joint Exhibit 2, P. 58, L. 11) his Unit Commander or Commanding Officer for any significant personnel actions remained the Commanding Officer, Fifth Army Student Detachment, Fort Sheridan, Illinois. Deposition of Lieutenant Colonel William H. Crisp, Joint Exhibit 7, at P. 8, L. 21 through P. 9, L. 11, P. 15, L. 18 through 24; Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 9, L. 4 and P. 43, L. 11 through P. 44, L. 11; Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, P. 16, L. 20 through P. 17, L. 4 and P. 23, L. 19 through 21; App. P. 126. As set out more fully herein, General Underwood succeeded the Commanding Officer of Fifth U. S. Army as Major Miller's Commanding Officer on March 9, 1971 (App. P. 167 and 168) and succeeded said Commanding Officer as the Commanding General of Fifth U. S. Army on June 30, 1971 (Stipulation of Facts, Joint Exhibit 1, P. 2).

While temporarily attached to Fort Leavenworth, Kansas, Major Miller and his family continued to reside in Kansas

---

27. Rothfuss v. Resor, 443 F.2d 554, 558 (5th Cir. 1971); see United States v. Stetter, *supra*.

City, Missouri, and Major Miller commuted daily from said residence to Fort Leavenworth. Deposition of Major Miller, P. 24, L. 21, Deposition of Lieutenant Colonel William H. Crisp, P. 8, L. 10 through 16.

2. That the functions of the Fifth U. S. Army Student Detachment were transferred from Fort Sheridan, Illinois to the Fourth U. S. Army Student Detachment, Fort Sam Houston, Texas, on March 9, 1971, and Major Miller's permanent assignment was transferred from Fifth U. S. Army, Fort Sheridan, Illinois to Fourth U. S. Army, Fort Sam Houston, Texas, under the command of General Underwood, in contemplation of the pending merger of the Fifth U. S. Army and Fourth U. S. Army. While Major Miller was never physically present at Fort Sam Houston, Texas until April 27, 1971, (Deposition of Major Miller, Joint Exhibit 2, P. 58, L. 11) he was permanently assigned to the Student Detachment of Fourth U. S. Army, Fort Sam Houston, Texas, and his unit commander or commanding officer for any significant personnel actions was General Underwood and the Commanding Officer of the Fourth U. S. Army Student Detachment at Fort Sam Houston, Texas, Lieutenant Colonel Daniel Michels, App. Pp. 17, 141; Deposition of Lieutenant Colonel Daniel Michels, Joint Exhibit 4, P. 4, L. 16 through P. 6, L. 18; Stipulation of Facts, Joint Exhibit 1, P. 2. The merger of Fourth U. S. Army and Fifth U. S. Army was not completed until June 30, 1971. Stipulation of Facts, Joint Exhibit 1, P. 2.

3. That on June 30, 1971, in pursuance of said merger, Fourth U. S. Army was inactivated and Fifth U. S. Army assumed command of all of the functions of Fourth U. S. Army and relocated its headquarters from Fort Sheridan, Illinois, to Fort Sam Houston, Texas.

4. That on June 30, 1971, all of the missions, functions, activities, personnel, records and equipment of the Fourth U. S. Army Student Detachment previously located at Fort Sam Houston, Texas, were then transferred to the Fifth U. S. Army Student Detachment, now located at Fort Sam Houston, Texas, with the exception of personal financial records, which were maintained at Fort Sheridan, Illinois, until such time as these records could be forwarded to the new command at Fort Sam Houston, Texas. Stipulation of Facts, Joint Exhibit 1, at P. 3. Both Fort Sam Houston, Texas and Fort Sheridan, Illinois, now fall under the command of Fifth U. S. Army located at Fort Sam Houston, Texas. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 18, L. 3 through 11.

5. That the Commanding General of Fourth U. S. Army at the time Major Miller filed his petition for Writ of Habeas Corpus, on April 28, 1971, was Lieutenant General G. V. Underwood, one of the named Respondents in this cause. Stipulation of Facts, Joint Exhibit 1, P. 2.

6. That on June 30, 1971, when the merger of Fourth and Fifth U. S. Armies was completed, General Underwood became the Commanding General of Fifth U. S. Army with headquarters at Fort Sam Houston, Texas, and which, after the merger, included among other units, Fort Sam Houston, Texas, Fort Leavenworth, Kansas and Fort Sheridan, Illinois. On September 15, 1971, Lieutenant General G. P. Seneff succeeded to the command of Fifth U. S. Army Headquarters, Fort Sam Houston, Texas. On September 21, 1971, Lieutenant General P. F. Cassidy succeeded to the command of Fifth U. S. Army with headquarters at Fort Sam Houston, Texas and for all intents and purposes has remained such since that date. Stipulation of Facts, Joint Exhibit 1 at P. 2.

7. That "The (March 9, 1971) reassignment of Major Miller and other members of the Fifth U. S. Army Student Detachment occurred because of the pending merger of Fourth and Fifth Armies". Stipulation of Facts, Exhibit 1 at P. 3.

8. It is admitted by the Government that Major Miller, upon departing Fort Leavenworth, Kansas, on April 27, 1971, en route to file his Petition for Writ of Habeas Corpus in the Western District

of Texas (wherein lies Fort Sam Houston, Texas) ". . . did not complete his 'out-processing' at Fort Leavenworth, Kansas". Stipulation of Facts, Joint Exhibit 8 at P. 2. Major Miller did not complete and sign Department of the Army Form 137, "Installation Clearance Record".

9. That upon arriving at Fort Sam Houston, Texas, on the 27th of April, 1971, the evening prior to filing his Petition for Writ of Habeas Corpus in this Court, Major Miller "registered" and "checked into" the Fort Sam Houston Officer's Club (Fort Sam Houston Open Officer's Mess) and continued to be quartered at the Fort Sam Houston Officer's Club for some five days until Major Miller found an apartment several blocks from the Fort Sam Houston Gate. Deposition of William L. Miller, Jr., Joint Exhibit 2, P. 21, L. 16–21, P. 30, L. 5–12.

10. That while Major Miller was quartered at the Officer's Club, he had several meals a day at said Officer's Club. Deposition of William L. Miller, Jr., Joint Exhibit 2, P. 49, L. 14.

11. That while Major Miller (or any other United States Armed Forces commissioned officer) was registered at the Officer's Club, Major Miller was subject to the rules and regulations of said Officer's Club and the post regulations of Fort Sam Houston, Texas, both under the command of General Underwood, the Commanding General of Fourth U. S. Army which was then in the process of being merged with Fifth U. S. Army, to be headquartered at Fort Sam Houston, Texas, under General Underwood's command. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, p. 15, L. 18 through p. 16, L. 2; Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, p. 9, L. 6–11.

12. That during the period Major Miller was registered at the Fort Sam Houston Officer's Club, were he to violate any of these rules or post regulations, he could be court-martialed at Fort Sam Houston, Texas. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 16, L. 3 through P. 17, L. 1; Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, P. 9, L. 12–17.

13. That if, during this period in which Major Miller was registered at the Fort Sam Houston Officer's Club, he were to become ill, then he would have been rendered medical treatment at Fort Sam Houston, Texas, and if he had been unable to proceed, he would not have been carried as AWOL at his new duty station. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 17, L. 213; Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, P. 7, L. 25 through P. 8, L. 13.

14. That were Major Miller to encounter General Underwood during the time he was registered at the Officer's Club, he would have been obligated to have accorded General Underwood military courtesies, such as a salute. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 17, L. 21–22. Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, P. 9, L. 18–25.

15. That during the time Major Miller was registered at the Fort Sam Houston Officer's Club and thereafter, he was afforded the privileges of the Fort Sam Houston Post Exchange and Commissary. Deposition of William L. Miller, Jr., Joint Exhibit 2, P. 21, L. 25 through P. 22, L. 1.

16. That on March 9, 1971, when Major Miller and the other members of the Fifth U.S. Army Student Detachment were transferred to the Fourth U. S. Army Student Detachment in preparation for the merger of Fourth U. S. Army and Fifth U.S. Army, " . . . the finance records of, I would say, ninety-nine percent of those people, remained at Fort Sheridan, Illinois, because the Finance Officer (at Fourth U. S. Army, Fort Sam Houston, Texas) did not have the capacity to maintain them". Deposition of Major John Hagerty, Joint Exhibit 5 at P. 11, L. 9–23; Stipulation of Facts, Joint Exhibit 1 at

P. 3; Stipulation of Facts, Joint Exhibit 8.

17. Fourth U. S. Army Student Detachment exercised "Command Responsibility" over these finance records during such time as these records were to remain physically located at Fort Sheridan, Illinois. Stipulation of Facts, Joint Exhibit 1 at P. 3.

18. That by failing to complete his "out-processing" and by failing to complete and sign Department of the Army Form 137, the Fourth U. S. Army Student Detachment, Fort Sam Houston, Texas, was unable to instruct the Finance and Accounting Officer—FAO—, Ft. Sheridan, Illinois, to transmit Major Miller's Financial Records to his next permanent duty station. Army Regulation 210–10 par. 1–22b, Exhibit "F", Stipulation of Facts, Joint Exhibit 8; Fort Leavenworth Regulation 210–2, Exhibit "G", Stipulation of Facts, Joint Exhibit 8; and Army Regulation 37–104–2, par. 3–21, changed No. 30, dealing with the transmittal of a Departing Member's Financial Data Record's Folder, Exhibit "H", Stipulation of Facts, Joint Exhibit 8.

19. That Major Miller's Financial Data Record Folder was thereafter maintained at Fort Sheridan, Illinois, until October 18, 1971, when said Financial Record Folder was destroyed by Lieutenant Colonel Robert N. Shilling, Finance and Accounting Officer, Fort Sheridan, Illinois, pursuant to par. 3–23b of Army Regulation 37–104–2, change no. 27. Stipulation of Facts, Joint Exhibit 8, p. 1 and see letter from Colonel Robert N. Shilling dated July 20, 1972, and addressed to the Department of the Army Staff Judge Advocate, Fort Sam Houston, Texas, to this effect. Exhibit "B", Stipulation of Facts, Joint Exhibit 8. Thus, Major Miller's Financial Records were physically maintained at Fort Sheridan when said installation came under the command of General Underwood upon the merger of Fourth and Fifth U. S. Armies, effective June 30, 1971.

20. When Major Miller was later released from the U. S. Army on November 5, 1971, he received his pay and allowances through the date of his release from the Finance and Accounting Officer at Fort Sheridan, Illinois, a Component of Fifth U. S. Army under the command of General Underwood's successor. This is the same unit from which he had been receiving his pay prior to his departure from Fort Leavenworth, Kansas, and from which he received his pay for the day upon which he filed his Petition for Writ of Habeas Corpus in the Western District of Texas. Stipulation of Facts, Joint Exhibit 8, P. 1; see also letter of instruction from Captain Edward Castart, Assistant Adjutant, Fort Sam Houston, Texas, dated November 11, 1971, Exhibit "A", Stipulation of Facts, Joint Exhibit 8; Deposition of William L. Miller, Jr., Joint Exhibit 2, P. 25, L. 4–7, P. 30, L. 21 through P. 31, L. 6, P. 31, L. 7, through P. 32, L. 12.

21. That on October 12, 1971, Special Order No. 198 was issued to Major Miller by headquarters, Fifth U. S. Army, Fort Sam Houston, Texas for the Commanding General, Lieutenant General P. F. Cassidy, General Underwood's successor, assigning Major Miller from Military Assistance Command Vietnam (not joined) to Fort Sam Houston Garrison, Fort Sam Houston, Texas. Stipulation of Facts, Joint Exhibit 1 at P. 3; see also Special Orders 198, dated October 12, 1971, and attached as Exhibit "A" to Stipulation of Facts, Joint Exhibit 1; Deposition of Col. Warren L. Taylor, Joint Exhibit 3, P. 55, L. 2–5. On several occasions prior to the time Major Miller departed Fort Leavenworth, while Maj. Miller was permanently assigned to subordinate units, the Dept. of the Army, Washington, D. C. issued Orders directly to Major Miller. For example, on March 9, 1971 the Department of the Army, Washington, D. C. issued orders directly to Major Miller, while he was permanently assigned to the Fifth U. S. Army Student Detachment, assigning him from the Fifth U. S. Army Student

Detachment at Fort Sheridan, Illinois, to the Fourth U. S. Army Student Detachment at Fort Sam Houston, Texas, in preparation for the merger of Fifth and Fourth U. S. Armies. (See Appellant's Appendix, P. 167–168). Thus, the Department of the Army, Washington, D. C. issued Assignment Orders directly to Major Miller, when, in fact, he had an immediate Subordinate Commanding Officer at Fort Knox, Kentucky and Fifth U. S. Army Student Detachment, Fort Sam Houston, Texas, respectively. And yet, after Major Miller departed Fort Leavenworth, when the Government contends his only Commanding Officer was at the Department of the Army, Washington, D. C., the only orders issued to Major Miller, were issued by Fifth U. S. Army, Fort Sam Houston, Texas, for the Commanding General, General Underwood's Successor, rather than directly to Major Miller from the Department of the Army. Stipulation of Facts, Joint Exhibit 1, P. 3; Separation Orders 198, dated October 12, 1971, and attached as Exhibit "A" to Stipulation of Facts, Joint Exhibit 1.

22. That while the above described Orders issued to Major Miller by headquarters Fifth U. S. Army, Fort Sam Houston, Texas, were authorized from the Department of the Army, Washington, D. C., all such permanent change of Assignment Orders must, of necessity, under Army Regulations, be authorized from the Department of the Army, Washington, D. C. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 25, L. 3–12, P. 40, L. 16–19; Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, P. 25, L. 5–8, P. 30, L. 15–21. "Any . . . permanent change of station (of) an officer is directed by Department of Army." Deposition of Lieutenant Colonel William H. Crisp, Joint Exhibit 7, P. 18, L. 7: see also Transcript of Testimony of Lieutenant Colonel William H. Crisp at hearing of July 26, 1972, at P. 54, L. 5–8. At the hearing had on June 30, 1971, this Court asked the Government whether Fourth U. S. Army (now merged with Fifth U. S. Army) could "Countermand" the orders assigning Major Miller to Vietnam. Transcript of hearing of June 30, 1971, at P. 15, L. 5–7. That is precisely what it appears Special Orders No. 198 did. The authority for such Orders came from the Department of the Army, Washington, D. C., as the Government admits it always must; however, the Orders were issued on the letterhead of Headquarters Fifth U. S. Army, Fort Sam Houston, Texas, under the command of General Underwood's Successor.

23. That on November 5, 1971, Major Miller was issued Orders by Headquarters Fort Sam Houston, Fort Sam Houston, Texas, releasing Major Miller from the U. S. Army. Stipulation of Facts, Joint Exhibit 1, P. 3–4, see also Special Orders No. 225, attached as Exhibit "B" to Stipulation of Facts, Joint Exhibit 1; Transcript of Testimony of Lieutenant Colonel William H. Crisp at hearing of July 26, 1972, at P. 42, L. 1–6.

24. That on November 5, 1972, Major Miller, who was in Kansas City, Missouri, due to the serious illness of his wife, handcarried his personnel file to Lieutenant Colonel Crisp at Fort Leavenworth, Kansas, where arrangements had been made for his release to take effect. Upon processing out, Colonel Crisp returned Major Miller's complete military file to Fort Sam Houston, Texas, rather than to the Department of the Army, Washington, D. C. Transcript of Testimony of Lieutenant Colonel William H. Crisp at P. 43, L. 18–22.

REMAND EXHIBITS ADMITTED
INTO EVIDENCE

| | |
|---|---|
| Joint Exhibit 1 | Stipulation of Facts Dated July 25, 1972 (and Exhibits attached thereto) |
| Joint Exhibit 2 | Deposition of William L. Miller, Jr. |
| Joint Exhibit 3 | Deposition of Col. Warren L. Taylor |
| Joint Exhibit 4 | Deposition of Lt. Col. Daniel L. Michels |
| Joint Exhibit 5 | Deposition of Mayor John Hagerty |
| Joint Exhibit 6 | Deposition of Captain Robert W. Mannix |
| Joint Exhibit 7 | Deposition of Lt. Col. William H. Crisp |
| Joint Exhibit 8 | Stipulation of Facts Dated November 24, 1972 (and Exhibits attached thereto) |

## CONCLUSIONS OF LAW

1. That General Underwood (or his Successors) exercised a sufficient degree of authority, "control over," and responsibility to Major Miller, after his departure·from Fort Leavenworth, Kansas on April 27, 1971, so as to make him a proper "Custodial" Respondent for Habeas Corpus jurisdiction purposes, in that:

(1) Even the Government now admits that upon departing Fort Leavenworth, Kansas, on April 27, 1971, Major Miller " . . . did not complete his 'out-processing' " of that Military Installation.

(2) Major Miller upon departing Fort Leavenworth, Kansas did not sign or complete Department of the Army Form 137 and as a consequence, Fourth U. S. Army Student Detachment under the command of General Underwood was unable to transmit Major Miller's financial records to his next duty station pursuant to Army Regulation No. 104–2, ¶ 3–21, change No. 30. As a consequence General Underwood and his command maintained a continuing authority over certain command functions with respect to the financial data and records of Major Miller.

(3) It is admitted by the Government that the Fourth U. S. Army Student Detachment under the command of General Underwood exercised "command responsibility" over these finance records while they were physically located at Fort Sheridan, Illinois. And upon completion of the consolidation of Fourth and Fifth U. S. Armies on June 30, 1971, the military installation at which Major Miller's financial records were physically maintained, Fort Sheridan, Illinois, came under the command of General Underwood. In fact, when Major Miller was later released from the U. S. Army on November 5, 1971, he received his pay and allowances through the date of his release from the Finance and Accounting Officer at Fort Sheridan, Illinois, a Component of Fifth U. S. Army, under the command of General Underwood's Successor. These financial records had never been transmitted to the "gaining" unit in Vietnam.

(4) Upon arriving at Fort Sam Houston, Texas, on the evening of April 27, 1971, Major Miller "registered" and "checked into" the Fort Sam Houston Officer's Club and continued to be quartered at the Fort Sam Houston's Officer's Club for some five days thereafter, including April 28, 1971, the date the Original Petition for Writ of Habeas Corpus was filed in this Court. While Major Miller was quartered at the Fort Sam Houston, Texas, Officer's Club, he had his meals on post at Fort Sam Houston, Texas and at this time and thereafter, was afforded the privileges of the Fort Sam Houston Post Exchange and Commissary.

(5) While Major Miller was registered at the Fort Sam Houston Officer's Club, Fort Sam Houston, Texas, he was subject to the rules and regulations of said Officer's Club and the Post Regulations of Fort Sam Houston, Texas, both under the command of General Underwood the Commanding General of Fourth U. S. Army, then in the process of being merged with Fifth U. S. Army which was to be headquartered as well at Fort Sam Houston, Texas, and as well under General Underwood's command. During this period Major Miller was subject to the Courtmartial jurisdiction of Fort Sam Houston, Texas, and if at the time he was registered at the Fort Sam Houston Officer's Club he were to violate any of these rules or Post Regulations, he could be Courtmartialed at Fort Sam Houston, Texas. In addition, if Major Miller were to have become ill while registered at the

Fort Sam Houston Officer's Club, he would have been rendered medical treatment at Fort Sam Houston, and were he to encounter General Underwood during the time he was registered at the Fort Sam Houston Officer's Club, he would be obligated to have accorded General Underwood all due Military courtesies, such as a salute.

█ In light of the fact that it is admitted that Major Miller never completely processed out of the command of General Underwood, his Financial Data and Records were retained and never transmitted to the supposed "Gaining Unit", the fact that he was physically present at and registered and quartered at Fort Sam Houston, Texas at the time of the filing of his Petition for Writ of Habeas Corpus herein and was subject to the rules and Post Regulations of Fort Sam Houston, Texas under the command of General Underwood, the Court finds General Underwood exercised sufficient control over Major Miller as to satisfy the requirements of Schlanger v. Seamans, 401 U.S. 487, at 489, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971). This continuing control is best exemplified by the fact that while the Department of Army, Washington, D. C., whom the Government contends is Major Miller's sole Custodian, could have directly issued orders to Major Miller reassigning him from Vietnam (not joined) to Fort Sam Houston, Texas, it was, in fact, Headquarters Fifth U. S. Army, Fort Sam Houston, Texas, under the command of General Underwood's successor, who issued and published special Orders No. 198 reassigning Major Miller on October 12, 1971, from Vietnam to Fort Sam Houston, Texas. And it was Headquarters Fort Sam Houston, Texas, also a subordinate under the command of General Underwood's Successor, and not Department of the Army, Washington, D. C., who issued the orders releasing Major Miller on November 5, 1971. Unlike Schlanger v. Seamans, *supra*, here there was no "total lack of formal contacts between [Major Miller] and the military

in [this] district"; the District to which Major Miller had been permanently assigned and from which Major Miller had never completely "out-processed." Strait v. Laird, 406 U.S. 341, 344, 92 S. Ct. 1693, 1695, 32 L.Ed.2d 141, at 144 (1972).

2. That there were a sufficient number of "meaningful contacts" between Major Miller and the Fourth U. S. Army, thereafter merged with the Fifth U. S. Army, so as to constitute a jurisdictional presence in the territory of this Court of Major Miller's admitted Washington D. C. Custodian. The Admitted Custodian, the Department of the Army, Washington, D. C., " . . . has enlisted the aid and directed the activities of Armed Forces Personnel in [Texas] and [its] dealings with [Major Miller]", in that:

(1) Units within the Fourth thereafter the Fifth U. S. Armies exercised "Command Responsibility" and, in fact, physically maintained Major Miller's Financial Data Records, which had never, in fact, been transmitted to his "gaining unit" in Vietnam.

(2) The Department of the Army by telegram (which was addressed from the Department of the Army to the Commanding General, Fifth U. S. Army, Fort Sam Houston, Texas) "enlisted the aid and directed the activities" of the Commanding General, Fifth U. S. Army, Fort Sam Houston, Texas, within the jurisdiction of this Court by way of detailed instructions with regard to the issuance of Orders by Fifth U. S. Army transferring Major Miller from Vietnam (not joined) to Fort Sam Houston, Texas.

(3) The Department of the Army again initiated and authorized the issuance of Orders releasing Major Miller by Headquarters Fort Sam Houston, Fort Sam Houston, Texas, again within the jurisdiction of this Court.

█ In neither of these instances was it necessary or required that the Department of the Army, Washington, D. C. enlist the aid or assistance of either Fifth U. S. Army or Headquarters Fort Sam Houston, Texas, both within the jurisdiction of this Court in order to facilitate either the transfer of Major Miller from Vietnam to Fort Sam Houston or to effect his release from the U. S. Army. In fact, at a time when Major Miller was assigned to a specific subordinate unit, the Department of the Army, Washington, D. C. issued an order directly to Major Miller. On March 9, 1971, the Department of the Army, Washington, D. C. without soliciting the assistance of Maj. Miller's permanently assigned unit, Fifth U. S. Army Student Detachment, transferred Maj. Miller from said Fifth U. S. Army Student Detachment at Ft. Sheridan, Ill., to the Fourth Army Student Detachment at Fort Sam Houston, Texas (Appellant's Appendix, P. 167–168). And yet now, after Major Miller has departed from Fort Leavenworth, Kansas, and at a time when the Government contends his only Commanding Officer is the Department of the Army, Washington, D. C., the only orders issued to Major Miller are issued through and published by the Headquarters Fifth U. S. Army and the Headquarters Fort Sam Houston, both units within the territorial jurisdiction of this Court. Thus, it would seem clear that the Department of Army, by enlisting the aid of Fifth U. S. Army in issuing Orders No. 198 attached as Exhibit "A" to Stipulation of Facts, Joint Exhibit 1, and enlisting the assistance of Fort Sam Houston, Texas, in the issuance of Orders No. 225 and attached as Exhibit "B" to Stipulation of Facts, Joint Exhibit 1, has constituted sufficient contacts to give the Department of the Army "Presence" in Texas, with respect to jurisdiction in this cause. Strait v. Laird, *supra*; Arlen v. Laird, 451 F.2d 684 (2nd Cir., 1971); Still v. Commanding Officer, 463 F.2d 991 (5th Cir., 1972); Hoover v. Kern, 466 F.2d 543 (5th Cir., 1972). Just as "the Army's enlisting, aiding and directing the activities of Personnel who arrested and incarcerated" a serviceman in Houston is sufficient contact to establish the Department of Army's presence as that Serviceman's "Custodian", within the District Court of the Southern District of Texas, the Department of Army's action here in enlisting the aid and directing the activities of Headquarters Fifth U. S. Army (the successor to the unit to which Major Miller had been permanently assigned and from which he had never completely out-processed), and Headquarters Fort Sam Houston, Texas, both within the jurisdiction of this Court, should be ample "Contact" to establish the presence of the Department of the Army as Major Miller's "Custodian" within the Western District of Texas. Hoover v. Kern, *supra*, 466 F.2d at 545.

In addition, it is well to point out that the Commanding Officer of the Department of the Army, which the Government contends was Major Miller's sole Custodian once he departed from Fort Leavenworth, Kansas, is "quite unlike a Commanding Officer, who is responsible for the day-to-day control of his subordinates." The Department of the Army in the instance of such individuals, even where they have actually completed their out-processing and are in-transit between two duty stations is basically an administrative function, serving as the interim titular commanding officer. There are a great number of individual servicemen at any given moment who are in such a status in-transit between two duty stations. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 23, L. 8–14; Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, P. 9, L. 13. As the United States Supreme Court so amply stated under similar circumstances in Strait v. Laird: "To give the commanding officer [of the Department of the Army] 'custody' of the thousands of reservists throughout the United States and to hold at the same time that the commanding officer is present for *ha-*

*beas corpus* purposes only within one small geographical area is to ignore reality." Strait v. Laird, *supra*, 406 U. S. at 345, 92 S.Ct. at 1695; Arlen v. Laird, *supra*, 451 F.2d at 687.

In a very recent case, the Court of Appeals for the Ninth Circuit, in Miller v. Chafee, 462 F.2d 335 (9th Cir., 1972) followed just such a rationale, holding that a Petitioner in precisely the same circumstances as Major Miller had Habeas Jurisdiction in the District in which he had been permanently assigned, even after he had effectively signed out of that unit and even though, under the applicable Navy Regulations, the named Respondent had thereby ceased to be in the Petitioner's chain of command. The named Respondent in Miller v. Chafee, *supra*, just as General Underwood in the case now before this Court, was " . . . unquestionably Miller's 'custodian' for the purposes of habeas corpus jurisdiction, and . . . was amenable to the process of the District Court." Miller v. Chafee, *supra*, at 337. However, the Petitioner in Miller v. Chafee, *supra*, precisely as the Petitioner now before this Court, was transferred out of the named Respondent's command just prior to filing his Petition for Writ of Habeas Corpus in that District. It was during the transit period between his two assignments that the Petitioner in Miller v. Chafee, just as Petitioner now before this Court, filed his Petition in the District where his prior permanent duty station was located. The Court there noted that under Navy Regulations the named Respondent "ceased to be [the Petitioner's] direct commander" and that "Thereafter, until he reported to [his new duty station], Miller was nominally in the custody of the Chief of the Bureau of Personnel in Washington, D. C." Miller v. Chafee, *supra*, at 337. The Government there, as here, urged that because Navy Regulations provided that the named Respondent was no longer Petitioner's Custodian once he had effectively signed out of his previously assigned unit, relief was now available "only in the District of

Columbia." Miller v. Chafee, *supra*, at 337.

The Court of Appeals for the Ninth Circuit, however, refused to accept such a limited concept of jurisdiction:

We decline, in the circumstances of this case, to indulge in the fictitious, limited concept of custody advanced by the Government. Miller was never in the District of Columbia, nor was he ever expected to be there. The alleged "custody" exercised by the Chief of the Bureau of Naval Personnel was no more than a hypertechnicality, serving record purposes known only to the Navy. . . . Any contrary holding would unnecessarily, and even unreasonably, restrict access to the courts for habeas relief. *Id.* at 337.

In another very recent case, the Court of Appeals for the First Circuit in Carney v. Laird, 462 F.2d 606 (1st Cir. 1972) held that an in-transit military petitioner has Habeas Corpus jurisdiction in the District in which he was last permanently assigned, even though he has effectively signed out of that District and even though Military Regulations prescribe that the Commanding Officer of that District is no longer in his chain of command.

The Court of Appeals for the First Circuit noted that the Supreme Court in Strait v. Laird, *supra*, "limited *Schlanger* to the proposition that a serviceman cannot bring habeas anywhere he happens to be . . . and adopted an analysis heretofore used principally in the area of long arm statutes. Thus it found Strait's Indiana commander 'present' in California by virtue of his acting through officers in California." Carney v. Laird, *supra*, 462 F.2d at 607. The Court noted as an applicable point of "contact" the fact that under Navy Regulations an individual who is "unable to report to his new command within a reasonable period of time due to a medical problem or some other unusual circumstance . . . is usually transferred to a command in the geographical area where he is located," Carney v.

Laird, *supra,* at 607, much as was revealed by the testimony in this case. Deposition of Colonel Warren L. Taylor, Joint Exhibit 3, P. 17, L. 2–13; Deposition of Lieutenant Colonel Daniel L. Michels, Joint Exhibit 4, P. 7, L. 25 through P. 8, L. 13. In addition, the Court noted that the Petitioner there was still under an obligation to surrender his pay records to his old duty station, much as Major Miller's Financial Records had, in fact, been retained by his old duty station and never transmitted to his "gaining unit".

The Court of Appeals for the Tenth Circuit also was confronted with just such a "jurisdiction dilemma occurring in the interval between active duty under one command and the date for reporting to duty under a new command" in Sutton v. Laird, 468 F.2d 1376 (10th Cir. 1972). Sutton, like Miller, had orders to report to the overseas replacement station, Oakland, California. However, Sutton, unlike Miller, completed his out-processing from his previous duty at Dugway proving grounds, Utah, where he had been permanently assigned prior to filing his Petition for Writ of Habeas Corpus. The Army, in the *Sutton* case, argued that since "the serviceman had been detached from Dugway for Army accountability purposes before initiating the habeas action" there was no longer any custodian within that jurisdiction. Interestingly, the Army in *Sutton* argued that during this in-transit period the "proper custodian is the new command" rather than Washington, D. C. as the Army has maintained in the instant suit. Sutton v. Laird, *supra,* at 1377. The Court acknowledged that Sutton had been dropped from the "Morning Report" and "carried as a reassignment loss from Dugway by the Army after the official detachment"; however, the Court was persuaded by the "persuasive . . . rationale" underlying the decision in Carney v. Laird, 462 F.2d 606 (1st Cir. 1972); Miller v. Chafee, 462 F.2d 335 (9th Cir. 1972); and Feliciano v. Laird, 426 F.2d 424 (2nd Cir. 1970). "Rather than viewing as determinative

[the Military's] accounting methods and the fictitious notions of custody which that produces, the actual circumstances must be considered." Sutton v. Laird, *supra,* at 1377.

Additionally, in United States ex rel. Ziemba v. Leonard, No. 72–C–1761, 5 SSLR 3771 (N.D.Ill., Oct. 13, 1972), the District Court for the Northern District of Illinois was faced with an in-service Petitioner who had signed out of Fort Sheridan, Illinois, the unit to which he was permanently assigned, at the time he filed his Petition in that jurisdiction. Petitioner Ziemba had been issued special orders by Fort Sheridan for overseas duty. The "authenticated 'morning report' extracts from the Fort Sheridan holding detachment . . . established that the Petitioner was released for attachment from Fort Sheridan" prior to his filing his Petition for Writ of Habeas Corpus in that Jurisdiction. United States ex rel. Ziemba v. Leonard, *supra.*

The Court in *Ziemba* noted that precision in the use of the term custody when applied to State or Federal prisoners disappears when applied to a member of the military who has freedom to travel during authorized leave from his assignment. The Court there found that the circumstance of a serviceman who filed his Petition for Writ of Habeas Corpus in the jurisdiction of his former permanently assigned duty station prior to reporting to his new assignment is analogous to and controlled by Strait v. Laird, *supra,* and jurisdiction was upheld.

Thus, the Courts of Appeal for the First, Second, Seventh, and Tenth Circuits, as well as the Fifth Circuit, have taken a more rational view of Habeas Corpus jurisdiction, not allowing the niceties and fictions of military bookkeeping regulations to obscure the reasonable result of allowing an in-transit serviceman, who has signed out of his previous duty station, to file in the District where he has had ample contacts and where his permanent assignment has theretofore been located.

Finally, throughout these proceedings, Respondent has argued that the sole custodian of Petitioner is the Commanding Officer of the Department of the Army, who acts in his official capacity at the Pentagon, Arlington, Virginia, and that Major Miller should have filed his Petition there. However, the Federal District Court for the Eastern District of Virginia has rejected this contention and refused jurisdiction in suits against the Secretary of the Army, holding that "the appropriate party respondent . . . means the person who has immediate control over the petitioner," *i.e.*, the base Commander. Evans v. Laird, No. 379–71–R (E.D.Va., Aug. 21, 1972); *see* Mullin v. Resor, No. 13–71–N (E.D. Va., Apr. 19, 1971). For this Court to be divested of jurisdiction now would really deprive petitioner of a forum in which to challenge his "custody" by habeas corpus. But, as Judge Goldberg stated in Hoover v. Kern, *supra,* 466 F.2d at 545, "We have found a Court for petitioner."

Accordingly, this Court finds that it has jurisdiction over petitioner, and reaffirms the Court's original Order of September 3, 1971, and it is so ordered.